[Crim. No. 33983. Second Dist., Div. Four. Mar. 17, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LARRY VIDAURRI, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Edward H. Schulman and Michael S. McCormick, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Juliet H. Swoboda and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

JEFFERSON (Bernard), J.*—Defendant has appealed from his conviction of the following offenses alleged in a multiple count information: (1) a violation of Penal Code section 245—assault with a deadly weapon on Davis (count I); (2) assault with a deadly weapon on Trent (count II, Pen. Code, § 245); (3) assault with a deadly weapon on Ramirez (count III, Pen. Code, § 245); (4) assault with a deadly weapon on Kennedy (count IV, Pen. Code, § 245); (5) a violation of Penal Code section 459—burglary of a Sears department store (count V); (6) a violation of Penal Code section 211—robbery of Ramirez (count VI). The jury found that defendant had used a deadly weapon in the commission of the offense charged in count VI; and the court found that he had been previously convicted of a felony.

Imposition of sentence was stayed as to count III, assault on Ramirez, pursuant to Penal Code section 654; a prison sentence was imposed on count VI, the robbery count. With respect to counts I, II, and IV, prison sentences were ordered to run concurrently with the sentence on count VI. A consecutive prison sentence was imposed for the burglary-of-Sears offense (count V).

I

*Contentions on Appeal*

Defendant makes the following contentions on appeal: (1) that the court erred in allowing rebuttal testimony concerning a prior burglary committed by defendant; (2) that the court erred in permitting cross-examination of defendant concerning the fact that, at the time of his arrest for the instant offense, there was an outstanding warrant for his arrest; (3) that the court improperly instructed the jury concerning the intent necessary for the offense of assault with a deadly weapon; (4) that the sentence imposed violated the proscriptions against multiple punishment found in Penal Code section 654; (5) that defendant's sentence was improperly enhanced in that the prior felony conviction was based on a guilty plea taken in violation of the requirements of *Boykin-*

---

*Assigned by the Chairperson of the Judicial Council.

*Tahl*;[1] and (6) that defendant is entitled to good time/work time credit for presentence time served.

## II

### *The Prosecution's Case*

Five eyewitnesses testified on behalf of the prosecution concerning the following sequence of events which took place on April 26, 1978. Defendant entered the Sears department store located in the Esplanade Shopping Center in Oxnard, California. Barry Davis, a security agent for Sears department store, testified that he observed defendant pick up two women's blouses and conceal them under his jacket and leave the store. Mr. Davis and Mr. Trent, another Sears security agent, followed defendant outside the store and confronted him in the mall outside the store. Davis testified that he approached defendant, identified himself as a Sears security officer, showed defendant his identification badge, and accused him of theft. Defendant immediately produced a knife from his pocket, with a blade approximately three and one-half inches in length, and pointed it at the two security guards.

Trent testified that he immediately attempted to remove the knife from defendant and handcuff defendant; defendant took several swings at Trent's head with the knife and struck him on the ear with either the blade or handle of the knife, causing bleeding. Defendant then ran out of the mall into the Sears parking lot, warning the officers to "[g]et back." As the security officers chased him through the lot, defendant stopped several times and made jabbing motions at his pursuers with the knife. Davis repeatedly called out to defendant that he was under arrest.

Davis and Trent continued to chase defendant; he would occasionally turn to them, brandish the knife, and beckon to them, telling them, "[c]ome on." While in the parking lot, Trent tried again to handcuff defendant and believes he hit defendant with the handcuffs during the attempt.

Gilberto Ramirez and his wife and daughter were returning to their car from the Sears store. As they approached their car, defendant,

---

[1]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

armed with the knife, came up and demanded the car keys. Ramirez refused, and defendant stabbed at him with the knife, pushed him down, tearing his clothes. Defendant took the car keys from Ramirez, got in Ramirez' car and tried to start the engine. Security Officer Davis lifted the car hood and tried to pull the coil wire from the engine; defendant left the car and chased Davis around to the back of the car, swinging the knife at him. Defendant then reentered the car and again attempted to start the motor; this time Davis was successful in removing the coil wire.

Defendant got out of the car, came after Trent and made a slashing motion at Trent's head with the knife; the knife came within four inches of Trent's face. Defendant then approached a person in the driver's seat of a parked Cadillac, pointed the knife at him and told him to move over. The occupant obeyed. Defendant got in but was unable to start the Cadillac. He left this vehicle and approached a family about to get into another car. He demanded their keys and began to chase the driver, but soon abandoned that pursuit. Defendant then approached a white Toyota driven by Nancy Kennedy, a security agent returning from her lunch break. As defendant approached her, Jess Hernandez, the man most recently chased by defendant, returned to the scene; he was an off-duty deputy sheriff, who offered two rubber hoses to the security guards to use as weapons against defendant. Defendant opened the door of Kennedy's vehicle and entered on the driver's side, brandishing his knife.

Kennedy began kicking at defendant as he stabbed at her with the knife. Kennedy managed to kick the knife from his hand and out of the vehicle. As defendant left the vehicle and retrieved the knife, Kennedy was able to close the car door and lock him out. Defendant then attempted to stab at her through the car window. Nancy Kennedy suffered a fractured rib and several deep bruises as a result of this encounter with defendant.

Defendant made additional unsuccessful attempts to commandeer vehicles, and then began running along the sidewalk outside the Sears store. He had been struck at least once with a hose by Trent during the struggle with Kennedy. As Trent and Davis pursued defendant, a store employee provided them with ax handles. Davis hit defendant on the head with the ax handle, knocking him to the ground.

Two Oxnard police officers testified that they recovered the stolen merchandise and knife from defendant, who was hospitalized.

## III

### The Defendant's Defense

Defendant testified that he entered the Sears store on April 26, 1978, with the intention of stealing the blouses. He did steal the blouses, hid them under his clothing, and left the store without paying for them. He was soon approached by Davis and Trent. One asked him to "come in with us." He saw a silver object in Trent's hand, which he thought was brass knuckles. The two men did not identify themselves and showed no badges. He refused to go with them, and one of them said something about stolen blouses. One of the men grabbed for his arm; defendant pulled back, and a fist hit his arm, apparently with something hard in the fist. Defendant backed away frightened, and pulled out his pocket-knife. Trent grabbed at defendant, who slipped away, but was then struck in the back of the head. Defendant said he felt dazed and began to run toward the parking lot. He remembers seeing a Cadillac in the parking lot, but remembers nothing else, except being struck and waking up in the hospital.

## IV

### Admissibility of Evidence of a Prior Burglary of the May Company Department Store

Appellant contends that the court erred in allowing the prosecution, after the defendant had put on his defense, to present evidence, in rebuttal, that defendant had committed a similar offense at the May Company department store.

Prior to the trial, defendant made an *in limine* objection to the prosecution's proposed evidence that on February 25, 1978, approximately two months prior to the instant offense, defendant had been seen shoplifting at the May Company department store in the Esplanade Shopping Center in Oxnard; that when confronted by security guards in the parking lot, he began to run away; that when he was chased by the guards, he stopped, turned to face them, and drew a knife; that he

threatened the guards with the knife and continued to brandish it until he effected his escape.

The trial court ruled that the prosecution could not present the May Company evidence as part of the prosecution's case in chief but that the court would reconsider the ruling depending upon the defendant's defense.

On this appeal, defendant contends that he was led to believe that the evidence of the May Company incident had been ruled inadmissible for all purposes and that, had he known that the trial court would reverse itself, he might well have elected not to testify. Defendant cites *People v. Bagwell* (1974) 38 Cal.App.3d 127 [113 Cal.Rptr. 122], in support of his contention that the court committed reversible error here.

In *Bagwell*, a defendant was charged with having murdered her husband by stabbing. The court initially rejected an offer of proof by the prosecution, on the issue of intent, that a year earlier, defendant had committed a similar assault on a boyfriend, resulting in his death. The court indicated that no cross-examination of defendant on that subject would be permitted because of the great prejudice to defendant; defendant took the stand and testified that she had not intended to kill her husband and was only trying to frighten him with the knife. Thereafter, the court allowed cross-examination concerning the prior assault, requiring the defendant to refuse to answer questions because of the privilege against self-incrimination.

The *Bagwell* court reversed, finding that defendant's Fifth Amendment privilege had been violated, since she "may have been lulled into a sense of security that if she, on direct examination, made no mention of the Los Angeles affair, no cross-examination on the subject would be allowed." (*Id.* at pp. 139-140.) In reversing defendant's conviction, however, the court made the pertinent observation: "We, of course, make no determination what the trial court's ruling at the next trial should be, upon renewed and properly supported motions to produce evidence, or cross-examine, on the alleged Los Angeles stabbing. Nor do we purport to suggest what ruling should be made if the court is again called upon to exercise its discretion under Evidence Code section 352." (*Id.* at pp. 140-141.)

Defendant's reliance upon *Bagwell* is insubstantial since *Bagwell* is factually distinguishable from the case at bar and is thus of little help

to defendant. The trial court's express statement in the case before us that the evidence was inadmissible only as part of the People's case in chief and that the issue was not closed to rebuttal, belies defendant's contention now that he was misled into believing that he could testify in his own behalf without fear of such impeaching evidence being introduced in rebuttal by the prosecution. Defendant was well aware of the limited nature of the court's ruling. Defendant cannot now properly be heard to complain that he was lulled by the court into believing that the evidence was ruled inadmissible for all purposes.

Defendant asserts that the evidence of the May Company offense was highly prejudicial, in that the jury would be likely to conclude that the defendant was a person of bad character and that thus it was probable that if he committed the prior offense, it is more probable that he committed the offense charged here. The jury would feel the "inevitable pressure" to convict defendant without much concern for his guilt. Certainly, this argument forms the basis for the interdiction against propensity or disposition evidence imposed by Evidence Code section 1101 when such evidence is offered to prove that a defendant committed the offense charged against him. Evidence of the May Company criminal act was properly admitted here to rebut defendant's contention that he drew his knife only in self-defense and to protect himself from an unwarranted attack by unidentified assailants.

The instant case is not unlike that presented in *People* v. *Terry* (1970) 2 Cal.3d 362 [85 Cal.Rptr. 409, 466 P.2d 961], in which a female codefendant objected to the introduction into evidence of proof that she had been involved in other criminal activity with her codefendants. The *Terry* court ruled that this evidence was properly admitted, since the female codefendant had testified that she had not known of the criminal intent of her male codefendant until he drew his gun and that she thereafter participated in the charged crime out of fear for her safety. The *Terry* court set forth the accepted principle that "[a]lthough proof of involvement in prior crimes is not admissible merely to show propensity for crime [citations], such evidence is admissible to prove motive, knowledge, or intent when such is an issue in the case [citations]. In other words, proof of involvement in prior crimes is admissible if it tends "'to overcome any material matter sought to be proved by the defense'" [citation], and, in particular, to rebut a defense that a *criminal act was done out of 'honest fear'* [citation]." (*Terry, supra,* 2 Cal.3d 362, 396.) (Italics added.)

## V

### *Was It Error to Permit Cross-Examination of Defendant Concerning an Outstanding Warrant for His Arrest?*

■ Defendant asserts error in the trial court's ruling permitting the prosecutor to cross-examine him concerning his knowledge of the existence of a warrant for his arrest on the date of the Sears offense for which he was on trial. Defendant asserts that the probative value of this evidence was insufficient to outweigh its prejudicial effect and that it should have been excluded.

At the conclusion of defendant's testimony on direct examination, the prosecutor moved the court for permission to cross-examine defendant on the following matters: In December 1977, defendant committed a burglary to which he pleaded guilty. In March 1978, one month prior to the instant offense, defendant failed to appear for sentence on the 1977 burglary. The trial court ruled that cross-examination of defendant about this matter sought to elicit evidence that was relevant to establish defendant's *intent* and *motive* for his violent reaction to the security officers' attempt to arrest him for shoplifting, and, hence, was permissible cross-examination. On the cross-examination, defendant admitted that at the time he committed the Sears offense, he believed that a bench warrant had probably been issued for his arrest, and that he would probably go to state prison as a result of his failure to appear for sentencing.

Defendant's argument here is that the evidence sought on cross-examination was extremely prejudicial in that the jury would surely find him guilty of the charged offenses once they learned that he had been convicted of a previous burglary. Defendant's argument is essentially that the probative value of this evidence was substantially outweighed by the danger of the jury's prejudicial use of the evidence as character-trait propensity or disposition evidence proscribed by Evidence Code section 1101.

That defendant was bent on escaping arrest, once he was suspected of shoplifting and confronted by the security officers, is scarcely open to question. The evidence of defendant's failure to appear for sentencing on a prior burglary charge and defendant's belief that there was an out-

standing warrant for his arrest because of the failure to appear was certainly relevant to establish his *motive* for committing assaults with deadly weapons to escape arrest. A defendant's motive—a state-of-mind fact—is relevant to prove that he committed the offense charged, including having the requisite intent, on the circumstantial-evidence-reasoning process that a person normally acts in conformity with his state of mind. The evidence thus avoids the proscription of Evidence Code section 1101, subdivision (a), against evidence of a defendant's commission of other crimes or bad acts whose *sole* relevancy is that of establishing a defendant's propensity or disposition to commit criminal acts as proof that he committed the crime for which he is on trial, and becomes admissible under the exceptions set forth in Evidence Code section 1101, subdivision (b). (*People* v. *Durham* (1969) 70 Cal.2d 171 [74 Cal.Rptr. 262, 449 P.2d 198] (defendant's parole status relevant to prove motive for committing first degree murder); *People* v. *Powell* (1974) 40 Cal.App.3d 107 [115 Cal.Rptr. 109] (defendant's parole status relevant to prove intent to commit first degree murder and rebut diminished capacity defense); see also *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267]; *People* v. *James* (1976) 56 Cal.App.3d 876 [128 Cal.Rptr. 733]; and *People* v. *Martin* (1971) 17 Cal.App.3d 661 [95 Cal.Rptr. 250].)

In the case before us, the court properly instructed the jury in the language of CALJIC No. 2.50[2] to the effect that the jury could consider evidence of other crimes committed by defendant only for the limited purpose of determining whether it demonstrated *motive* or *intent* on the part of defendant, and for no other purpose. This instruction was appropriate and sought to guide the jury in its consideration of the evidence to minimize the possibility that the jury would use the evidence improperly as character-trait propensity or disposition evidence.

Under the circumstances presented, the danger of undue prejudice to defendant from the cross-examination relative to his failure to appear for sentencing on another burglary and his knowledge that there was an

---

[2]CALJIC No. 2.50, as given, read as follows: "Evidence has been received tending to show that the defendant committed crimes other than that for which he is on trial.... [¶] Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show one or more of the following: [¶] A motive for the commission of the crime charged;...[¶] The existence of the intent which is a necessary element of the crime charged;... [¶] For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case. [¶] You are not permitted to consider such evidence for any other purpose."

outstanding warrant, was slight since defendant had already admitted commission of one offense charged—the Sears burglary. Admissibility is thus sanctioned by the principle that "admission of other crimes evidence cannot be justified merely by asserting an admissible purpose. Such evidence may only be admitted if it '(a) "tends logically, naturally and by reasonable inference" to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue.' [Citation.]" (*People v. Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366].)

## VI

### *The Correctness of Jury Instructions on Assault With a Deadly Weapon*

■ Appellant contends that the court erred in that it failed to instruct the jury, *sua sponte*, that an intent merely to frighten was insufficient for a finding of assault with a deadly weapon. Appellant cites no authority for the novel proposition that such an instruction is required of the trial court, *sua sponte*, and we know of none.

The trial court instructed the jury in the language of CALJIC instruction No. 9.03,[3] defendant's special instruction No. 10,[4] and the People's special instruction No. 2.[5] Each of the foregoing instructions

[3]CALJIC No. 9.03, as given, read in part as follows: "Every person who commits an assault upon the person of another with a deadly weapon is guilty of a crime. [¶] An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon. [¶] ...The necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another by the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury...."

[4]Defendant's special instruction No. 10 reads: "If an injury is not inflicted, and the evidence shows defendant had the means of inflicting injury, such evidence should be considered in determining whether there was an attempt to commit a violent injury. [¶] If you have a reasonable doubt whether such violent injury was attempted with criminal intent, you must find the defendant not guilty."

[5]People's special instruction No. 2 reads: "The intent required is the intent to wilfully commit an act, the natural and probable consequences of which if successfully completed would be the injury to another. The actual intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary. When an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit the violent injury is presumed."

makes it clear that the defendant must attempt to inflict violent injury upon the victim in order to be guilty of assault with a deadly weapon.

Defendant correctly asserts that "conviction of assault may not be grounded on an intent only to frighten." (*People* v. *Puckett* (1975) 44 Cal.App.3d 607, 614 [118 Cal.Rptr. 884].) Further, "'[i]t is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].)

In the instant case, the defendant offered no testimony that he intended only to frighten anyone by the use of his knife. In fact, his testimony was that he remembered pulling his knife out of his pocket because he thought he was "going to get jumped," but that he did not remember opening the knife and had no memory of ever stabbing at anyone with it. Nor does the testimony of the prosecution witnesses raise the possible theory that defendant intended only to frighten his victims. He struck and injured Kennedy, grabbed and pushed Ramirez, tearing his shirt, and came within inches of slashing the face of Trent with his knife.

The jury was properly instructed on the intent necessary to commit the crimes of assault with a deadly weapon, and the court did not err in failing to instruct, *sua sponte*, in the language now urged by defendant.

## VII

### *The Issue of Multiple Punishment*

■    Defendant advances the contention that the court erred in ordering that the sentence on the burglary conviction run consecutively to the sentences on the assault convictions, arguing that Penal Code section 654[6] is thus violated. Defendant argues that the assaults were commit-

---

[6]Penal Code section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

ted in an effort to effect a successful escape from the burglary. Hence, the various crimes all constitute part of one continuous, indivisible transaction, which may not be separately punished. The rule precluding double punishment has been stated as follows: "'The proscription against double punishment ... is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute.... The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' [Citation.]" (*People v. Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].)

In support of his contention that escape from the scene was part of his one objective—the successful burglary of Sears—defendant cites *People v. Niles* (1964) 227 Cal.App.2d 749, 755 [39 Cal.Rptr. 11], wherein the court held that an assault committed while attempting to escape from a burglary could not be separately punished. The People rely on *People v. Hooker* (1967) 254 Cal.App.2d 878, 880-881 [62 Cal.Rptr. 675], in which the court rejected a contention similar to the one made here, and concluded with the observation that "[h]is [defendant's] objective in concealing merchandise was to steal it. Hooker substantially achieved that objective at the time he pocketed the merchandise in the store, an achievement made legally conclusive when he later stepped outside the store premises without paying for it. On the other hand, Hooker's objective in hitting Perkins was to avoid arrest, an objective which had no essential connection with the petty theft he had completed at an earlier time."

We find it unnecessary to resolve the apparent conflict between *Niles* and *Hooker*. It would be arbitrary to reach a conclusion either that escape is always a part of a continuous transaction which includes the principal offense, or that an escape is never a part of one continuous transaction which includes the principal offense. Whether a course of conduct is divisible depends on the "intent and objective of the actor." (*Miller, supra*, 18 Cal.3d 873, 885.) In *People v. Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905], the Supreme Court explained: "The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations

committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."

In applying this rule, the courts analyze the evidence to determine whether all the offenses committed were part of the defendant's original plan or some were an afterthought or acts committed in response to unforeseen developments. Thus, in *In re Ward* (1966) 64 Cal.2d 672 [51 Cal.Rptr. 272, 414 P.2d 400], the evidence established that defendant kidnaped the victim for the purpose of robbery. It was held that he could not be separately punished for both the kidnaping offense and the robbery offense. However, in upholding separate punishment for the subsequent rape of the same victim, the court observed: "[I]t appears that petitioner did not formulate the intent to rape Miss Gilbert until after he had taken her purse and money. As a result, the offense of rape is separately punishable. [Citation.]" (*Ward, supra*, 64 Cal.2d 672, 678.) And on similar facts, in *People* v. *Jackson* (1967) 255 Cal.App.2d 584, 587 [63 Cal.Rptr. 359], the court found that "the evidence demonstrates that during the course of defendant's criminal conduct he committed three separate crimes—the result of divisible acts—and that they were not the product of a single intent."

Finally, we refer to *People* v. *Braun* (1973) 29 Cal.App.3d 949, 975 [106 Cal.Rptr. 56], in which the court upheld the imposition of separate sentences for kidnaping and rape of the same victim, and noted that "the record virtually compels the conclusion that the intent to rape did not arise until after the kidnaping."

We now turn to the record in the instant case to determine what evidence exists to support the trial court's conclusion that the offense of burglary was divisible from the offenses of assault with a deadly weapon. Defendant testified that he was brought to the Sears store in a car driven by his friend, Cedro. Cedro dropped him off at Sears and went to shop in another store. Defendant told his friend that he would meet him outside of Sears, and his friend agreed to pick him up there in 15 to 20 minutes. Defendant's testimony thus establishes that he intended to steal merchandise from Sears and to leave the area in a car driven by his friend. This evidence supports the trial court's determination that the burglary and subsequent assaults were *not* part of one continuous, indivisible course of conduct. On the contrary, the assaults were committed in response to the unforeseen circumstance—the approach of the

Sears security guards. The trial court therefore did not err in imposing separate sentences for the burglary of Sears and the subsequent offenses of assaults with a deadly weapon committed in the parking lot.

## VIII

### *The Constitutionality of the Prior Guilty Plea*

■ Defendant's sentence was enhanced by virtue of his having been convicted of a felony in 1971. Prior to trial, defendant challenged the constitutionality of the guilty plea on which the prior felony conviction was based; that challenge was rejected by the trial court. On this appeal, defendant reasserts his position with respect to the prior plea; that the record does not sufficiently demonstrate a knowing and intelligent waiver of constitutional rights in conformity with the requirements of *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

The record reflects that defendant executed a form entitled "Declarations and Order Regarding Plea of Guilty...." That form contains provisions (some preprinted and some completed in handwriting), to the effect that defendant has been informed of and understands the nature of the charges against him, the possible maximum punishment, and the consequences of a guilty plea. It states that he understands that he has the right to a speedy and public trial by jury, to confront witnesses, to present evidence, to remain silent, to compel attendance of witnesses, and to have the assistance of counsel. The form provides that defendant freely and voluntarily gives up all of those constitutional rights, which have been explained to him by his attorney, and that he freely and voluntarily pleads guilty. This form was signed by defendant, and his attorney signed another portion of the form, declaring that he had fully explained all of its contents and consequences to defendant.

The transcript of the proceedings held at the time of entry of the plea reflects that the court asked defendant if he had signed the form, if his attorney had explained it to him, if he understood it, and signed it voluntarily without promises, to all of which defendant answered: "Yes." Defense counsel was also interrogated by the court in the same manner, and defendant then pleaded guilty in open court.

Defendant contends that this "shorthand procedure," while found acceptable in *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 303 [110 Cal.Rptr. 329, 515 P.2d 273], for misdemeanor pleas, should not be condoned for a guilty plea procedure in felony cases. We note that the *Mills* court, although addressing the issue of the applicability of *Boykin-Tahl* to misdemeanors, did not expressly limit its approval of the written-form waiver to misdemeanor actions. In *Mills*, the defendant had signed the waiver form in advance of the hearing date, and the guilty plea was entered in defendant's absence by his attorney. The holding in *Mills* that a plea of guilty entered in the *absence* of defendant may be constitutionally valid, was limited to misdemeanor actions.

With respect to the facts of the case before us, both *Mills* and *Tahl* support the trial court's conclusion that the prior conviction was constitutionally valid. In *Mills*, the court made the observation that "[n]othing in the *Tahl* opinion specifically requires that it be the *trial court* that advises a defendant of his constitutional rights. 'What is required is evidence that the particular right was known to and waived by the defendant. The explanation need not necessarily be by the court, although the waiver must be by the defendant.' (1 Cal.3d at p. 133, fn. 6.) In the case of a written waiver, of course, the waiver is 'by the defendant' even though he does not personally deliver it to the court." (*Mills, supra,* 10 Cal.3d 288, 305, fn. 15.) (Italics in original.) *In re Tahl* tells us that "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (*Tahl, supra,* 1 Cal.3d 122, 132.) (Italics in original.)

Each of the foregoing requirements is met in the instant case. We conclude, therefore, that the trial court did not err in holding that the defendant's prior felony conviction was constitutionally valid.

IX

*Credit for Presentence Good-time and Work-time*

Finally, defendant contends that he is entitled to good-time and work-time credit for the time served in custody awaiting trial. This question has now been resolved by *People* v. *Sage* (1980) 26 Cal.3d 498

[165 Cal.Rptr. 280, 611 P.2d 874], a decision not yet final since it was decided on February 19, 1980. In *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], the court indicated that, once the law is settled as to the correct interpretation of the Penal Code sections involved, a defendant entitled to relief may seek it through appropriate proceedings. (See *Wende, supra,* 25 Cal.3d 436, 443, fn. 4.)

The judgment is affirmed.

Files, P. J., and Rogan, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 14, 1980. Bird, C. J., Mosk, J., and Newman, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.