[No. AO21288. First Dist., Div. Four. Feb. 1, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD CHARLES WEAVER, Defendant and Appellant.

### COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Jean R. Sternberg, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Martin S. Kaye and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**WILLIAMSON, J.**\*—Appellant Richard C. Weaver was charged with robbery (Pen. Code, § 211), attempted murder (Pen. Code, §§ 664, 187) and 10 other offenses. The information further alleged as follows: (1) appellant used a firearm in the commission of the robbery and attempted murder within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a); (2) appellant had suffered two prior felony convictions within the meaning of Penal Code section 1203, subdivision (e)(4); and (3) appellant had suffered an additional prior felony conviction within the meaning of Penal Code section 667.5, subdivision (b). Appellant pleaded guilty to the above named charges and allegations. On motion of the district attorney, the other charges were dismissed in the interest of justice.

On December 13, 1982, the superior court sentenced appellant to state prison for the upper term of nine years for the attempted murder, plus an additional two years for the use enhancement, plus a consecutive sentence of one year and eight months for the robbery with a use enhancement, plus one year for the Penal Code section 667.5 prior; for a total of thirteen years, eight months. He was given the appropriate credits. Timely notice of appeal from "the sentencing only" was filed February 3, 1983.

Appellant contends that the superior court erred in imposing consecutive sentences because the three factors relied upon were each improper in light of the facts of this case.

---

\*Assigned by the Chairperson of the Judicial Council.

The relevant facts of the case are as follows: Appellant robbed the owner of a pharmacy at gunpoint at about 6 p.m. on August 22, 1983. Immediately prior to the robbery police Officer Bradley J. Bales had observed suspicious activity in the vicinity of the pharmacy and he was investigating the area. Then the officer saw appellant leave the pharmacy in a suspicious manner. The officer described appellant's reaction to their meeting as follows: "he suddenly did like a double take and he looked in my direction . . . . He did a couple of double takes and looked at me and looked again . . . ."

The officer called out for appellant to stop and talk to him. Appellant did not heed the command and instead, entered an automobile and drove away. Officer Bales pursued him in his vehicle and radioed for assistance. A high speed chase ensued which ended when appellant stopped his automobile. The chase continued on foot until appellant seized first a pickup truck and then a red Pontiac TransAm, in each case ordering the occupants from the vehicles at gun point, and escaped from officer Bales. Officer Bales had chased appellant for three miles and four and one-half to five minutes. He had constantly broadcast his and appellant's positions over the police radio.

Police Officer Michael G. Thomas received the broadcasts, and, as he was proceeding toward the site of the chase, appellant's red TransAm rammed into his left front fender. Thomas picked up the chase as did Police Sergeant Ronald Neill. Sergeant Neill had been involved in the chase earlier but he had lost sight of appellant for a while. The chase continued for about two and one-half miles by car and foot. During the final foot phase appellant pointed his gun at Sergeant Neill and fired two shots which missed. Thereafter, Sergeant Neill and Officer Thomas fired several shots in appellant's direction. Appellant was hit in the hand and surrendered.

At other times during the chase appellant had pointed his gun at the police officers but apparently had not fired. The police had shot at appellant throughout the chase.

Appellant pleaded guilty to the robbery of the pharmacy owner and to attempted murder of Officer Neill, based on the firing of two shots at the officer. The superior court gave three reasons for the imposition of consecutive sentences for the two offenses.

"THE COURT: I've concluded to impose consecutive terms.

"The reasons for this conclusion are these: First, the two crimes and their objectives were independent of each other.

"Secondly, they were committed at different places and different times, and with different victims.

"And third, the crimes involved separate acts of violence and threat of violence." Appellant argues that the first two reasons are "not factually supported by the record" and the third "constitutes an impermissible dual use of facts already used in imposing the two gun use enhancements."

We conclude that the trial court's first two reasons are valid and are supported by the record. These reasons are based on California Rules of Court, rule 425(a)(1), (3) which provides as follows: "Criteria affecting the decision to impose consecutive rather than concurrent sentences include: (a) Facts relating to the crimes, including whether or not: (1) The crimes and their objectives were predominantly independent of each other. . . . (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

In evaluating whether the superior court properly relied on these factors, courts look to cases interpreting Penal Code section 654. (*People* v. *Sanchez* (1982) 131 Cal.App.3d 718, 737-738, 728-729 [182 Cal.Rptr. 671].) That section prohibits double punishment "'where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' [Citation.]" (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].

In *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450, 463-466 [163 Cal.Rptr. 57], the question before the court was whether Penal Code section 654 prohibited the imposition of consecutive sentences for a burglary and an assault which was committed in an effort to effectuate an escape from the scene of the burglary. The defendant Vidaurri had argued that the sentence violated section 654. The court rejected the contention and held: "Defendant's testimony thus establishes that he intended to steal merchandise from Sears and to leave the area in a car driven by his friend. This evidence *supports the trial court's determination that the burglary and subsequent assaults were not part of one continuous, indivisible course of conduct.* On the contrary, the assaults were committed in response to the unforeseen circumstance—the approach of the Sears security guards. The trial court therefore did not err in imposing separate sentences for the burglary of Sears and the subsequent offenses of assaults with a deadly weapon committed in the parking lot." (Italics in the original.) (*People* v. *Vidaurri, supra,* 103 Cal.App.3d at pp. 465-466; see also *People* v. *Vizcarra* (1980) 110 Cal.App.3d 858, 865 [168 Cal.Rptr. 257]—robbery of two victims at same location is two separate robberies for sentencing purposes.)

We choose to follow the holding of *Vidaurri* since the approach of the various police officers herein was also an unforseen circumstance. Moreover, the case for consecutive sentences is even stronger than in *Vidaurri*. Appellant committed two different serious crimes at two different locations. Each crime was complete within itself. They formed two self-contained incidents. Indeed, appellant had escaped from Officer Bales for a short time before he was again surprised by the unforseen arrival of the victim and another police officer.

In his third contention, appellant argues that the trial court's ruling "constitutes an impermissible dual use of facts already used in imposing the two gun-use enhancements." Initially, we will agree that there was only one gun used by appellant. However, the record discloses numerous acts of violence and threats of violence to support the trial court's decision. The gun was used at the pharmacy to order patrons to lie on the floor. Later, in addition to firing shots at the police, appellant used the gun to order the occupants of both the pickup truck and the TransAm from their vehicles. Furthermore, appellant drove his car at high speeds through city streets and, in point of fact, struck the vehicle of Officer Thomas. All of these factors demonstrate violence or the threat of violence sufficient to support the trial court's use of consecutive enhancements.

The judgment is affirmed.

Poché, Acting P. J., and Panelli, J., concurred.

A petition for a rehearing was denied March 1, 1984, and appellant's petition for a hearing by the Supreme Court was denied March 28, 1984.