Filed 7/28/15  P. v. Bennett CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040344 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. Nos. C1121262 & C1103796) |
| v. | |
| DAVID BENNETT, | |
| Defendant and Appellant. | |

### STATEMENT OF THE CASE

An information charged defendant David Bennett with reckless driving while evading a peace officer (Veh. Code, § 2800.2, subd. (a); count 1), carrying a concealed dirk or dagger (former Pen. Code, § 12020, subd. (a)(4); count 2), resisting, delaying, or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1); count 3), being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 4), and driving under the influence of drugs (Veh. Code, § 23152, subd. (a); count 5).  The information alleged that defendant committed counts one and two while out of custody on bail (Pen. Code, § 12022.1).  The information additionally alleged that defendant had one prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i)/1170.12) and had served two prior prison terms (Pen. Code, § 667.5, subd. (b)).

A jury found defendant guilty on counts one, three, four, and five. The jury was unable to reach a verdict on count two, and the trial court declared a mistrial on that count. In a bifurcated proceeding, the trial court found true the on-bail allegation, the prior strike allegation, and the prior prison term allegations. The trial court sentenced defendant to six years in prison.

Defendant now appeals from the judgment of conviction. On appeal, defendant contends that the trial court erred in admitting evidence showing that he was on parole and in possession of a stun gun when he evaded police. As set forth below, we will affirm.[1]

## STATEMENT OF THE FACTS

### The Prosecution's Case-in-Chief

Santa Clara County Sheriff's Deputy Chris Reed was patrolling San Jose in a marked patrol car on the afternoon of December 4, 2011. He was driving on Winchester Boulevard, and he saw defendant driving a car with expired registration tags. Deputy Reed turned on the patrol car's red and blue lights in order to initiate a traffic stop. Defendant did not stop and accelerated to a speed of 40 or 50 miles per hour. Deputy Reed turned on the patrol car's siren, and defendant increased his speed. Deputy Reed followed defendant, and defendant drove on the road's shoulder at a speed of 50 to 60 miles per hour. Defendant increased his speed to 90 miles per hour, drove through a red light, and attempted to make a left turn. Defendant's car fishtailed, hit the median, crashed into a parked car, rolled over completely, and landed in the front yard of an apartment complex.

---

[1] Defendant has filed three petitions for writs of habeas corpus. This court ordered those petitions to be considered with the appeal. By separate order of this date, we deny the three petitions.

2

Deputy Reed stepped out of the patrol car, pulled out his gun, and approached defendant's car. Deputy Reed ordered defendant to show his hands "[n]umerous times." Defendant did not comply and moved around inside his car. Two other sheriff's deputies arrived, and defendant revved his car's engine. Deputy Reed ordered defendant to step out of his car, and defendant reached under his seat. The deputies reached into the car and grabbed defendant's arms. Defendant tried to break free. The deputies told defendant to stop resisting, but defendant continued to struggle and "flail around." The deputies placed defendant in handcuffs and attempted to pull him out of the car. Defendant wedged his legs against the side of the car to prevent the deputies from pulling him out of the car. The deputies eventually were able to pull defendant out of the car. They placed defendant face down on the ground, and defendant "was thrashing around kicking." The deputies finally restrained defendant and arrested him.

One of the deputies searched defendant and found a box cutter in defendant's pocket. The box cutter was three or four inches long, and the blade was extended in a locked position.

Defendant's blood was drawn after his arrest, and it tested positive for methamphetamine at .064 micrograms per milliliter. When presented a hypothetical tracking the facts of defendant's case, a criminalist opined that the driver was under the influence of methamphetamine and could not safely operate a vehicle.

*Defense Evidence*

Dr. Anna Gleezer testified as an expert in psychiatry, including substance-use disorders. She testified that use of methamphetamine can cause psychosis that "looks quite a bit" like the psychosis associated with schizophrenia. Symptoms of methamphetamine-induced psychosis include hallucinations, delusions, and paranoia. A person experiencing methamphetamine-induced psychosis may hear voices during an auditory hallucination. A person experiencing methamphetamine-induced psychosis will

3

often misinterpret benign stimuli and react in an unreasonable and irrational way. When presented a hypothetical tracking the facts of defendant's case, Dr. Gleezer opined that the driver's behavior was consistent with methamphetamine-induced psychosis. On cross-examination, Dr. Gleezer testified that it was "possible" that the driver in the hypothetical was experiencing methamphetamine intoxication without any psychosis. She explained, however, that the facts of the hypothetical leaned more towards methamphetamine-induced psychosis and not just methamphetamine intoxication.

Defendant's mother testified that defendant worked as a general laborer in her construction business. She explained that it was "normal" for defendant to use a box cutter in his work.

### The Prosecution's Rebuttal Evidence

After defendant's arrest, Santa Clara County Sheriff's Deputy Eduardo Carballo searched the area surrounding defendant's crashed car. There was a pile of "personal belongings" and glass six to eight feet away from defendant's car. An operable stun gun was in the pile. Deputy Carballo testified that the glass in the pile "appeared to be the rear window of" defendant's car.

Defendant was on parole at the time of the charged crimes. As conditions of parole, defendant was prohibited from possessing weapons and required to abide by all laws, including laws regarding drug use. Defendant's parole agent advised defendant of the parole conditions and warned defendant that he could be taken into custody if he violated the conditions.

## DISCUSSION

Defendant contends that the judgment must be reversed because the trial court erred in admitting the rebuttal evidence regarding the stun gun and his parole status. He asserts that the evidence was minimally relevant, cumulative, and unduly prejudicial. As

4

explained below, we conclude that the trial court did not abuse its discretion in admitting the evidence.

*Background*

During motions in limine, the defense moved to exclude evidence of defendant's parole status and his possession of a stun gun. The prosecutor stated that if defendant's parole status became "relevant through witness cross-examination or defense evidence," she would seek to admit his parole status as rebuttal evidence. The prosecutor also stated her intention to introduce evidence regarding the stun gun found near defendant's car. The trial court ruled that evidence of defendant's parole status could not be introduced until such evidence became relevant to an issue like motive or flight. The trial court ruled that evidence regarding the stun gun could not be introduced until the prosecution was able to establish a foundation and "connect" the stun gun to defendant.

The prosecutor subsequently moved to admit evidence of defendant's parole status and his possession of the stun gun as rebuttal evidence, arguing that the evidence was necessary to establish defendant's motive and intent. The prosecutor explained: "I would be offering that the fact that the defendant was on parole at this time, that he understood his parole conditions to be that he could not ingest any drugs, illegal drugs, or have on him any weapons. And that I believe that would be a motive for him to evade police."

Defense counsel argued that the evidence should be excluded because it was "vastly more prejudicial than probative." Defense counsel asserted that the evidence of defendant's parole status was extremely prejudicial because it demonstrated that defendant had committed prior crimes and had been to prison. Defense counsel noted that the stun gun "could not be connected to" defendant "in any way." Defense counsel ultimately argued that the evidence regarding the stun gun and defendant's parole status

5

would not "assist the trier of fact at all" because the evidence that defendant was driving under the influence of methamphetamine provided a motive for his flight from police.

In response to the arguments, the trial court noted that there was "certainly enough evidence there from which a reasonable trier of fact could conclude this stun gun came flying out of [defendant's] car." The trial court also noted that the "entire defense" was that defendant "was going through meth induced paranoia" and "didn't know these were police officers." Given the defense evidence, the trial court concluded that the prosecution had "no explanation for why [defendant] would run," the defense had "disproved motive," and the prosecution "should be entitled to rebut that."

The trial court ruled that evidence of defendant's parole status and his possession of the stun gun could be admitted as rebuttal evidence. The trial court explained: "[Defense counsel], you called an expert witness, a[n] extremely credible and convincing, frankly, expert witness to testify that the defendant's conduct—that the defendant's behavior and that the defendant's demonstrated symptomatology was consistent with a methamphetamine induced psychosis. . . . [C]learly the thrust of the defense case was this is not a person who is running away from police, this is not a person who is attempting to resist, delay or obstruct the police. This is a person who believes something none of us can see or hear and is acting on that belief. [¶] Now the only reasonable possible rebuttal the People might have for that otherwise compelling evidence is to explain—is to provide other evidence that would discount that, if it does. And here the People have evidence to explain why the defendant would be first fleeing from the police, second resisting them, to this extent which is otherwise explained only perhaps by the fact that he's a little high on meth or a lot high on meth. The alternative explanation that he's got methamphetamine in his system, he's got a box cutter in his back pocket, . . . which may or may not be a dirk or dagger, that he's got a stun gun in his possession and that because he's on parole that means that he can be—can be returned to

6

custody forthwith provides a motivation and an incentive which explains. It also helps to explain what specifically his intent was, and that is to avoid being arrested after being stopped for nothing more than a license plate tag . . . . [¶] So it's directly relevant in rebuttal to the defense case. I don't see frankly how I can avoid it."

After issuing its ruling, the trial court noted that it would "dramatically" limit the prosecution in the presentation of the evidence. The trial court also noted that it would instruct the jury that the evidence could be considered only for the "limited purpose" of determining defendant's motive and intent and could not be considered "for any other purpose."

### Legal Principles and the Standard of Review

"Evidence must be relevant to be admissible." (*People v. Duff* (2014) 58 Cal.4th 527, 558.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

Evidence Code section 352 accords the trial court discretion to exclude relevant evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice." (Evid. Code, § 352.) "Evidence is prejudicial within the meaning of Evidence Code section 352 if it encourages the jury to prejudge defendant's case based upon extraneous or irrelevant considerations." (*People v. Rogers* (2006) 39 Cal.4th 826, 863.) "Evidence is substantially more prejudicial than probative [citation] if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.' [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 724 (*Waidla*).)

Evidence of an uncharged offense or prior misconduct is admissible when relevant to prove motive or intent. (Evid. Code, § 1101, subd. (b).) "Generally, due to the potential undue prejudice inherent in uncharged offenses, evidence of their occurrence is

7

admissible only if it has substantial probative value." (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1098.) Evidence of an uncharged offense should be excluded if it is " 'merely cumulative.' " (*People v. Harris* (1998) 60 Cal.App.4th 727, 740.)

Rebuttal evidence " 'is restricted to evidence made necessary by the defendant's case in the sense that he has introduced new evidence or made assertions that were not implicit in his denial of guilt.' " (*People v. Young* (2005) 34 Cal.4th 1149, 1199 (*Young*).) "Testimony that repeats or fortifies a part of the prosecution's case that has been impeached by defense evidence may properly be admitted in rebuttal." (*Ibid.*)

"The trial court has broad discretion to determine the admissibility of evidence." (*People v. Jimenez* (2008) 165 Cal.App.4th 75, 81.) An appellate court "applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence." (*Waidla, supra,* 22 Cal.4th at p. 717.)

### The Trial Court Did Not Abuse its Discretion

The evidence regarding the stun gun and defendant's parole status was relevant. To prove the reckless evading charge, the prosecution had to establish that defendant intended to evade a pursuing peace officer. (*People v. Mathews* (1998) 64 Cal.App.4th 485, 488; Veh. Code, §§ 2800.1, 2800.2.) The evidence that defendant could be taken into custody for a parole violation of possessing a stun gun showed that defendant had a motive, and thus the requisite intent, to flee from police. (See *People v. Vidaurri* (1980) 103 Cal.App.3d 450, 461 ["A defendant's motive—a state-of-mind fact—is relevant to prove that he committed the offense charged, including having the requisite intent, on the circumstantial-evidence-reasoning process that a person normally acts in conformity with his state of mind."].) The relevance of the evidence was magnified by the defense evidence. The defense theory was that defendant was experiencing a methamphetamine-induced psychosis and therefore did not have the requisite intent for the evading charge. The circumstance that defendant had a strong motive to evade police countered the

8

defense evidence and suggested that defendant did in fact intend to evade police. Accordingly, contrary to defendant's assertion, the evidence regarding the stun gun and his parole status had substantial probative value.

The evidence regarding the stun gun and defendant's parole status was not merely cumulative. Defendant asserts that the evidence was cumulative because his "act of driving under the influence of methamphetamine provided a motive to evade police." Defendant's assertion ignores the impact of the defense evidence. The defense expert's testimony, which the trial court characterized as "extremely credible and convincing," showed that defendant's act of driving under the influence of methamphetamine was not a motive for defendant's flight from police. The thrust of the defense expert's testimony was that defendant was experiencing a methamphetamine-induced psychosis and did not even realize he was fleeing from police. Thus, although the evidence that defendant was driving under the influence of methamphetamine initially could be construed as evidence of motive to flee from the police, the defense expert's testimony negated that motive evidence. As the trial court noted, the defense had "disproved motive," leaving the prosecution with "no explanation for why [defendant] would run." Given the defense evidence, the evidence regarding the stun gun and defendant's parole status was not cumulative on the issue of motive. (See generally *Young, supra,* 34 Cal.4th at p. 1199 [testimony that repeats or fortifies a part of the prosecution's case that has been impeached by defense evidence may properly be admitted in rebuttal].)

Finally, the evidence regarding the stun gun and defendant's parole status was not unduly prejudicial. As the trial court stated, it "dramatically" limited the prosecution in the presentation of the evidence. The jury did not hear evidence regarding the crimes for which defendant was on parole. There was no evidence that defendant ever carried a stun gun on his person. Rather, the prosecution presented evidence that an operable stun gun was found among debris near defendant's car, and the prosecution presented evidence

9

that possession of a weapon or use of drugs was a parole violation that could result in defendant being taken into custody. The brief evidence of defendant's parole status and possible possession of a stun gun did not pose an "intolerable 'risk to the fairness of the proceedings or the reliability of the outcome.' " (*Waidla, supra,* 22 Cal.4th at p. 724.) We must conclude that the evidence was not unduly prejudicial.

In sum, the evidence regarding the stun gun and defendant's parole status was highly relevant, not merely cumulative, and not unduly prejudicial. The trial court did not abuse its discretion in admitting the evidence.[2]

### DISPOSITION

The judgment is affirmed.

---

[2] In their briefs, the parties mention evidence showing that defendant told the arresting officers he had ingested methamphetamine. In argument to the jury, defense counsel noted that defendant told the officers he had ingested methamphetamine. It appears, however, that such a statement was never admitted into evidence. This court has reviewed the record, and it was unable to locate the statement. The parties do not provide a record citation for the statement. Given that defendant's statement does not appear to have been in evidence, this court did not consider the statement in reaching its conclusion.

_____
RUSHING, P. J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.

*People v. Bennett*
**H040344**