Tuckett, J., dissented and filed opinion and Henriod, J., dissented and filed opinion and joined in the dissent of Tuckett, J.

483 P.2d 437

**Donald COMBS, Plaintiff and Respondent,**

**v.**

**John W. TURNER, Warden, Utah State Prison, Defendant and Appellant.**

**No. 12024.**

Supreme Court of Utah.

March 30, 1971.

**398**

Vernon B. Romney, Atty.Gen., Lauren N. Beasley, Robert B. Hansen, Asst.Attys. Gen., Salt Lake City, for defendant-appellant.

Ronald N. Boyce, Salt Lake City, for plaintiff-respondent.

ELLETT, Justice:

The defendant appeals from an order releasing the plaintiff from the Utah State Prison on a writ of habeas corpus. The plaintiff herein was defendant in a criminal case wherein he entered a plea of guilty and was sentenced and committed to the prison.

Section 76–20–8.1, U.C.A.1953 (1969 Pocket Supplement), under which plaintiff was charged, reads:

When any person shall have requested credit as evidenced by a credit device

it shall be unlawful for that person with intent to defraud or cheat to * * * purchase or attempt to purchase any goods, property or service on credit, * * * by the use of any false, fictitious, counterfeit or expired credit card, * * *.

The plaintiff and his wife by means of a proscribed credit card undertook to purchase some automobile tires. They were directed to come back later and pick up the tires. The plaintiff herein now claims that he changed his mind about picking up the tires because he had been out of prison for four years and wanted to stay out. With that noble thought in mind, he permitted his wife and another to go pick up the tires. Both he and his wife were charged with violating the section of the statute as set out above. Upon the advice of his attorney, he entered a plea of guilty, and thereafter the charge against his wife was dismissed. He was sentenced and committed to prison and seven months later brought this writ of habeas corpus.

At the hearing on the writ he advanced the usual claims of inadequate representation in that counsel also represented his wife and thus had a conflict of interest; innocent of the offense charged; coerced by the prosecuting attorney in that a deal was made whereby if he entered a plea

of guilty, the charge against his wife would be dismissed; etc.

To us the evidence of the proceedings at the time of plea is clear that Mr. Combs was adequately represented by counsel and that he knowingly, understandingly, and voluntarily entered the plea of guilty. True it is that one of his motives was to free his wife from the felony charge, but a bargain to that effect with the district attorney does not necessarily amount to coercion.[1]

The case of McGuffey v. Turner, 18 Utah 2d 354, 423 P.2d 166 (1967), is identical to the matter before us except that McGuffey did not have counsel when he entered his guilty plea. In a habeas corpus hearing McGuffey testified that his main concern was to secure a dismissal of the charge against his wife. After he entered the plea of guilty, the charge against his wife was dismissed. We there reversed the trial court for releasing the prisoner.

In the instant matter the trial court's finding upon which he concluded to release the petitioner is set out:

Plaintiff's guilty plea was not voluntarily, knowingly and intelligently entered due to the following circumstances: he pleaded guilty for the purpose of securing dismissal of pending charges

1. Padgett v. United States, 252 F.Supp. 772 (D.C.1965); Kent v. United States, 272 F.2d 795 (1 Cir. 1959); State v. Hansen, 79 N.M. 203, 441 P.2d 500 (1968); United States v. Weber, 9 Cir., 429 F.2d 148; North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

against his wife who had just undergone surgery for cancer; there is evidence that plaintiff was not guilty of the crime charged in the information; there was no inquiry made to ascertain whether plaintiff's conduct included all elements of the crime with which he was charged; the attorney representing plaintiff at the time his plea was changed to guilty was also representing plaintiff's wife, thus creating a possible conflict of interest prejudicing plaintiff.

■ A plea of guilty dispenses with the necessity of proof, and the issue of innocence or guilt cannot here be relitigated any more than it could be after a jury verdict of guilty.[2]

■ The trial court found that at the time of plea "there was no inquiry made to ascertain whether plaintiff's conduct included all of the elements of the crime with which he was charged."

It is difficult to see how this finding could have been made. Mr. Combs' own lawyer examined him as follows:

MR. BARNEY: And you are entering this plea, voluntarily, and because you, in fact, have used a credit card without authority?

MR. COMBS: Yes, sir.

MR. BARNEY: And do you understand the punishment that can be im-

posed by this court is up to five years in the Utah State Prison?

MR. COMBS: Yes; I realize that.

MR. BARNEY: And do you realize the court is the only person, or the only party, that can impose sentence; and, neither the District Attorney nor myself, have any right to do so?

MR. COMBS: Can I make a request, right now, sir?

MR. BARNEY: You have something you want to state—

MR. COMBS: Yes, sir, I do.

MR. BARNEY: —in this regard?

MR. COMBS: I would like to ask the judge if I could have enough time to make restitution on what I have done?

■ The defendant had been convicted four times for forgeries committed and was well acquainted with the fine points of how to defraud and cheat. It is apparent that he knew the procedure in the criminal courts. He knew he was guilty and wanted time to make restitution. The fact that his wife and another got the merchandise is no defense to Mr. Combs. The statute makes it a crime to purchase or *attempt to purchase,* etc.

The elements of the crime charged were so presented to the court by the defendant and his counsel that the court was or had

---

2. 21 Am.Jur.2d, Criminal Law § 495; State v. Stewart, 110 Utah 203, 171 P.2d 383 (1946).

to be aware that there was no improper plea being made.

This matter is complicated in that subsequent to the oral order granting the petitioner's writ, the district attorney moved to dismiss the criminal case under which the warden relied for his authority to detain the prisoner. The trial court granted the motion to dismiss and by written order released the applicant.

■ Respondent contends that the question of this appeal is moot because any action this court takes will not have any material effect on the parties to the action; that if the court affirms the district court, respondent will remain out of custody; and that if the court reverses the district court, this will not affect the parties either, as all charges have been dismissed against respondent and were dismissed after an adjudication that his conviction was illegal and there is nothing pending against him.

We would agree with this contention if the granting of the writ of habeas corpus was proper. However, a reversal of the trial court causes the status to revert back to the situation it was before the sentence was vacated.

■ Appellant did not appeal from the dismissal of the case or assign it as error in his brief in this matter. Ordinarily appellate courts will not review unassigned errors. However, in a case where the jurisdiction of a lower court is involved, the matter may be reviewed without its being assigned as error. The law is found in 5 Am.Jur.2d, Appeal and Error § 656, as follows:

> Even in the absence of an assignment of error, an appellate court will usually consider a question involving its own jurisdiction or the jurisdiction of the lower court. The appellate court may consider a jurisdictional question although the parties themselves do not raise it. * * *

■ The cases seem to hold that once the court delivers a prisoner on commitment to a warden or jailer, he has no power to recall the order. A leading case is that of Brown v. Rice, 57 Me. 55, 2 Am. Rep. 11 (1869). In that case the defendant pleaded guilty, was sentenced to serve six months in jail, and was committed. Eighteen days later the court undertook to revoke the sentence and impose a prison term. The Supreme Court said:

> After conviction, if no legal bar is interposed, it is the duty of the court to award sentence, and after such sentence of imprisonment is pronounced and recorded on the docket, it is the duty of the court to issue a warrant to the sheriff or warden, directing him to take the convict into custody, and remove him to the designated place of confinement.

When the court has done these acts, it would seem to have done all that it had legal power to do, and its power over the prisoner or his destiny, * * * would appear to be at an end.

Another case in point is that of People v. Meservey, 76 Mich. 223, 42 N.W. 1133 (1889). There, two defendants pleaded guilty to a charge of burglary and were sentenced to be confined in the state prison. Next day they were brought before the sentencing court, where the judge vacated the sentence, saying that it appeared that sentence was imposed under a misapprehension of facts, etc. The Supreme Court reversed, saying:

We also think that the original sentences had gone into effect, and that one day of the imprisonment at Jackson, under the sentences, had passed at the time the order was made vacating them. The circuit judge had no power at that time to vacate the sentences, because the authority over the prisoners had passed out of his hands by his own order.

In 168 A.L.R. the annotator at page 710 says:

The power which a trial court may exercise over its judgments during term, or during a fixed statutory time following their entry, does not extend to authorize revision or modification of a valid sentence in criminal cases after the commitment of the defendant thereunder; its power of revision of the sentence exists only so long as it remains unexecuted.

A few states permit the court to mitigate a sentence after commitment, but the great weight of authority is to the effect that no change of sentence, even by way of mitigation, is permissible after a prisoner has been committed.[3]

The motion to dismiss the complaint some ten months after sentence and commitment should not have been granted. The court had no jurisdiction in the matter.[4] In addition to the cases cited, Art. VII, Sec. 12, of our Constitution provides for a Board of Pardons with power to commute punishments and grant pardons after conviction. This board has the *exclusive* right in that regard. If the district court can recall a case where a prisoner has been committed and dismiss the complaint, it would be in conflict with the duties of the constitutionally created Board of Pardons.

The case is reversed with directions to reinstate the case and to remand the pris-

---

3. See 3.b of the annotation in 168 A.L.R. at page 714.

4. The section of the statute mentioned in the dissent has to do with probation granted *before* commitment, and has no relationship to matters occurring afterwards.

oner to the custody of the warden. No costs are allowed.

CALLISTER, C. J., and CROCKETT, J., concur.

TUCKETT, Justice (dissenting).

I dissent. It seems to me that the pronouncements in the main opinion abrogate or at least cast doubt upon the powers granted to courts by the provisions of Section 77–35–17, U.C.A.1953.

I also observe that the majority in this civil matter directs the district court to reinstate a separate case not before us. It seems to me we should decide the issue of the legality of the plaintiff's custody but that we should not go beyond that and direct the court below to act in a case not here for review and one dealing with an entirely different controversy.

HENRIOD, Justice (dissenting).

I dissent and join Mr. Justice Tuckett's dissent.

First, the only issue here is legality of restraint. The main opinion says there was none,—hence I think the decision simply should be a reversal, perhaps, if a majority of the court is constrained to reverse, leaving the matter of restoring custody to the Warden to proper authorities,— unless something happened that would preclude it. It would appear that that something did happen, which would require a proceeding independent of this appeal.

The main opinion talks at length about the lack of authority in a criminal case, for the trial court to recall or vacate sentences once a prisoner has been committed, —with which doctrine I would not quarrel,—but that is not the situation here. The trial court recalled nothing and vacated nothing and did nothing on its own initiative, save to grant the petition for the writ after a full hearing and argument. After that *the District Attorney moved to dismiss the criminal case,* which motion was granted in the interest of justice. The main opinion relies rather heavily on the idea that once the trial court commits an accused, the court "has no power to recall" it, and that "its power over the prisoner or his destiny \* \* \* would appear to be at an end," as was any authority to vacate or revise the matter. I think such pronouncement and the authorities cited therefor are inapropos, since, as stated, the trial judge did nothing that would render them dispositive. This is a habeas corpus proceeding,—a civil matter,—and not the criminal case giving rise to it. There was no appeal from that case initially or in this appeal. The court here has only the burden of reversing the trial court's *order granting the writ,* or of approving it,—not the *order dismissing the criminal case,* which bears an entirely different docket number both in the District Court and this court, and which present

case was prompted by the District Attorney's motion to dismiss.

I am cognizant that in the McGuffey case, the state appealed and we unanimously reversed the trial court's granting of a petition for writ of habeas corpus,— and we ordered the trial court to quash the writ and remand McGuffey to the Warden. In that case, however, the trial court dismissed the robbery charge on its own volition. That is not the case here.

The District Attorney's office, an arm of the state, and under the direct supervision of the Attorney General (67–5–1), that is appealing here,—a somewhat unorthodox and inconsistent circumstance,— made the motion to dismiss the action, which at that point was as much an issue as Combs' restraint of liberty. It would seem that before this court orders the trial court to do much of anything the matter of that motion to dismiss and the resulting dismissal, all for a presumably good cause, should be resolved.

In addition to the position I take on the aspect of this case reflected in the paragraph immediately above, I urge that perhaps we made a mistake in the remand portion of the McGuffey case and that we should overrule that part of it. The instant case itself seems to point up the advisability of so doing. To do anything more could lead us on safari in a civil proceeding down a road into an erstwhile juristic jungle of no return.