SEYBOLD, Plaintiff in error, v. STATE, Defendant in error.

*No. State 155. Argued October 30, 1973.—Decided
November 27, 1973.*
(Also reported in 212 N. W. 2d 146.)

228

For the plaintiff in error there was a brief by *Terence T. Evans*, attorney, and *Cook & Franke, S. C.*, of counsel, all of Milwaukee, and oral argument by *Mr. Evans*.

For the defendant in error the cause was argued by *Robert D. Martinson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

CONNOR T. HANSEN, J. On this review, the defendant raises two issues:

1. Whether the defendant's plea of guilty was involuntary because the trial judge participated in the plea bargaining?

2. Whether the defendant's plea of guilty was involuntary because it was motivated by the desire to obtain probation for his wife?

At the hearing on postconviction motions, the defendant acknowledged his participation in the crimes, and as we view the record he could hardly do otherwise. Also, although he recognizes he knowingly and understandably entered pleas of guilty, he now asserts they were involuntary.

*Did the trial judge participate in the plea bargaining?*

After the trial had proceeded for some time, the lawyer for one of the male defendants requested a recess.

An extended conference was held in the chambers of the trial judge. It was following this conference that the male defendants withdrew their pleas of not guilty and entered guilty pleas to the two charges, and that the attempted murder charges against the two women were dismissed and their pleas changed to guilty on the robbery charges.

In *State v. Wolfe* (1970), 46 Wis. 2d 478, 175 N. W. 2d 216, we considered the impropriety of judicial participation in plea bargaining and stated that the vice of such judicial participation is that it destroys the voluntariness of the plea. The judicial process in a criminal proceeding should be a search for truth and the evaluation of available alternatives. However, any advance understanding between the prosecutor and the defendant must not involve the judge. *Farrar v. State* (1971), 52 Wis. 2d 651, 191 N. W. 2d 214; *State v. Erickson* (1972), 53 Wis. 2d 474, 192 N. W. 2d 872. The trial in this case was conducted by CARL H. DALEY, reserve circuit judge, and predated the foregoing decisions by a considerable period of time. Nevertheless, from our examination of the record, the action of Judge DALEY conformed to the principles set forth in both *Wolfe, supra,* and *Farrar, supra.*

Although the defendant asserts that Judge DALEY made a commitment to defense lawyers in chambers that he would place the defendant's wife on probation if the defendant pled guilty and that defense lawyers communicated this "deal" to the defendant, the record simply does not support any such assertion.

Max Goldsmith, the lawyer who represented defendant's wife at trial, testified at the postconviction hearing. The unequivocal testimony of Goldsmith is that although the trial judge was present at the conference, the judge insisted he was no part of any plea arrangement; that he would be fair in imposing sentences; and made no commitment. Goldsmith further testified that after the conference, he told the defendant that there had been no plea

arrangement that bound anybody; that it was his judgment that the women would be given probation; but that such was his "judgment and not a guarantee."

James Shellow, lawyer for one of the other male defendants, also testified at the postconviction hearing. As to whether the women would be placed on probation if the male defendants pled guilty, it was his testimony that ". . . I'm reasonably certain that in my presence the defendants were told that in our best judgment this is what was going to happen, but we couldn't guarantee it."

In denying the postconviction motion, the trial court found that the defendant had failed in his burden of proving that the trial judge coerced or induced or made any promises in exchange for a guilty plea. After examination of the record, we are of the opinion that no clear and convincing proof was submitted which would sustain any other finding.

Defendant has completely failed in his proof that any plea arrangement was ever made that involved the trial judge. Therefore, the issue of judicial participation in a plea arrangement is destroyed.

*Was the guilty plea involuntary because it was motivated by the desire to obtain probation for defendant's wife?*

At the time the defendant entered his plea of guilty, his trial counsel inquired of him as to whether any inducements or promises had been made in order for him to change his plea. To this inquiry, the defendant responded, "No, absolutely not." Later in the same proceeding, the trial judge inquired as to whether any inducements had been made to him as to what the district attorney would recommend or what the court would do in order to influence the defendant to change his plea of not guilty to guilty. The defendant responded by stating,

"None whatever, Your Honor." There were additional inquiries as to voluntariness of the defendant's decision to change his plea from not guilty to guilty. The defendant's response indicated beyond a doubt that the defendant knowingly, understandingly and voluntarily entered his plea of guilty.

Subsequently, Ruth Seybold, his wife, changed her plea to guilty on the armed robbery charge and said there had been no inducements made to her to change her plea. However, both Ruth Seybold and Janice Belcher continued to claim they were not guilty on the attempted murder charge. When the judge learned that all defendants had changed their pleas except for the two women as to the attempted murder charge, he asked the district attorney what facts the state would prove on the attempted murder charges against the two women. The district attorney summarized his evidence against the women. The sufficiency of this evidence was questionable and the court expressed some doubt as to whether it would even be enough evidence to go to the jury. The district attorney also agreed that the witnesses who had seen the two women in the parking lot were some distance away. Counsel for defendant's wife said he would make a motion to dismiss at the close of such evidence by the state if the case went to trial and the district attorney said he ". . . would not object to granting of the motion, if made, Your Honor, because that is, as I have stated, all that the state has in its most fair and probative value." Defense counsel's motion to dismiss was then granted by the court.

This discussion on the record demonstrates that the attempted murder charge against the defendant's wife was properly dismissed.

When sentencing of the two women was being considered, Mr. Goldsmith asked Detective Elias if Ruth Seybold had a record and Elias said she had never been

convicted. Moreover, Goldsmith made a statement on behalf of Ruth Seybold summarizing the facts that she was well-educated; that she had done research work on behalf of hemophiliacs; and that she was a mother of two sons. The trial judge certainly cannot be said to have acted out of the ordinary in granting Ruth Seybold probation.

As previously determined, there were no promises or guarantees of probation for Ruth Seybold made by her lawyer, Goldsmith, or Shellow, or the trial judge. We would agree with the statement in *Seybold v. Cady* (7th Cir. 1970), 431 Fed. 2d 683, fn. 4, p. 685, wherein it is stated:

"As a matter of fact a fair interpretation of Seybold's language would support the premise that most of the coercion involved in arriving at the decision to plead guilty was applied by his wife and another female who 'both burst into tears' when Seybold was reluctant to accept the 'deal.' "

However, even assuming that the defendant had been promised that his wife would be placed on probation if he pled guilty, this would not, ipso facto, render the plea involuntary.

In *State ex rel. White v. Gray* (1973), 57 Wis. 2d 17, 29, 203 N. W. 2d 638, this court reviewed various cases on this issue and held as follows:

"We conclude that the voluntariness of a plea bargain which contemplates special concessions to another—especially a sibling or a loved one—bears particular scrutiny by a trial or reviewing court conscious of the psychological pressures upon an accused such a situation creates. . . ."

In *Gray,* the alleged promise was for probation for the defendant's brother, but the record was incomplete and the case was remanded for factual findings as to the

nature of the plea bargain, if any, and the effect such bargain had on the voluntariness of the plea.

As recognized in *Rahhal v. State* (1971), 52 Wis. 2d 144, 187 N. W. 2d 800, many guilty pleas have some element of compulsion but this is not to say that they are necessarily involuntary. In *Rahhal, supra,* pages 151, 152, it was said:

". . . The distinction between a motivation which induces and a force which compels the human mind to act must always be kept in focus. When the defendant is not given a fair or reasonable alternative to choose from, the choice is legally coerced. . . ."

In *Drake v. State* (1969), 45 Wis. 2d 226, 233, 172 N. W. 2d 664, this court said the defendant's subjective desire to plead guilty in order to avoid the implication of his wife in his jail break was a self-imposed coercive element which did not destroy the voluntariness of his plea.

*Phillips v. State* (1966), 29 Wis. 2d 521, 530, 139 N. W. 2d 41, and *Bosket v. State* (1966), 31 Wis. 2d 586, 598, 143 N. W. 2d 553, involved the questions of whether a plea was coerced in light of a police threat to prosecute a suspect's girl friend on another charge if the defendant did not confess and a police threat to prosecute defendant's wife as an accessory after the fact unless he gave a statement. These cases are distinguishable from the instant case because here the defendant and his wife had *already been charged* and their trials commenced.

In *Cortez v. United States* (9th Cir. 1964), 337 Fed. 2d 699, certiorari denied (1965), 381 U. S. 953, 85 Sup. Ct. 1811, 14 L. Ed. 2d 726, the Ninth Circuit Court of Appeals held a plea of guilty voluntary despite the defendant's argument that his plea was coerced by a promise to reduce charges against his wife.

In *Combs v. Turner* (1971), 25 Utah 2d 397, 399, 483 Pac. 2d 437, 438, the Supreme Court of Utah said:

"To us the evidence of the proceedings at the time of plea is clear that Mr. Combs was adequately represented by counsel and that he knowingly, understandingly, and voluntarily entered the plea of guilty. True it is that one of his motives was to free his wife from the felony charge, but a bargain to that effect with the district attorney does not necessarily amount to coercion." (Citations omitted.)

In accord, *see McGuffey v. Turner* (1967), 18 Utah 2d 354, 423 Pac. 2d 166. In *People v. Duran* (1972), 498 Pac. 2d 937, 939, the Colorado Supreme Court sitting *en banc* said:

"We accept the rationale of *Cortez* and the two Utah cases above cited to the effect that negotiation regarding charges against a loved one does not *necessarily* render a plea bargain the product of coercion. Such a plea can be voluntary. . . ." (Emphasis in the original.)

Even if the defendant did plead guilty partly because of his belief that his wife would receive probation if there was no trial and all the defendants admitted their guilt, this certainly was not the only factor which motivated his plea. The proof against him was overwhelming. Indeed, he was forced to admit his part in the offense at the postconviction motion hearing lest he appear patently incredible.

We further observe his credibility was subject to question by many previous statements which he had made which were inconsistent with his testimony. When the defendant had been taken to the hospital after his apprehension, he gave a signed statement to the police admitting his part in the crime. At the postconviction motion hearing the defendant was specifically asked whether the giving of this statement, an obvious admission of guilt, had any effect on him to change his plea, and he admitted it did.

The lower court's conclusion that the defendant's plea was ". . . with full deliberateness; freely, voluntarily and understandingly made," was fully supported by the evidence.

*By the Court.*—Order affirmed.