[Crim. No. 22366. Aug. 8, 1983.]

In re DAVID IBARRA on Habeas Corpus.

## COUNSEL

Rowan K. Klein, under appointment by the Supreme Court, and Klein & Nelson for Petitioner.

Quin Denvir, State Public Defender, and Mark Fogelman, Deputy State Public Defender, as Amici Curiae on behalf of Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Paul C. Ament and Cynthia Sonns Waldman, Deputy Attorneys General, for Respondent.

## OPINION

**BROUSSARD, J.**—Petitioner seeks a writ of habeas corpus after conviction upon a plea of guilty of robbery (Pen. Code, § 211) while armed (Pen. Code, § 12022, subd. (a)), and assault with a deadly weapon (Pen. Code, § 245, subd. (a)). Petitioner's plea was entered pursuant to a "package-deal" plea bargain in which his two codefendants also pled guilty. He was sentenced in accordance with the bargain to a three-year term for the robbery, a one-year armed enhancement and a consecutive term of one year for assault with a deadly weapon.

Petitioner raises three basic contentions. First, he claims that he was denied effective assistance of counsel because his attorney urged him to accept a coercive plea bargain. Second, he argues that his plea was involuntary because he had not been properly advised of his rights. Finally, he maintains that his plea bargain was per se invalid because a "package-deal" arrangement is inherently coercive.

We have rejected the ineffective assistance of counsel claim because counsel's decision was a tactical one which might be made by competent counsel. We have also decided that, under normal circumstances, the trial court may properly rely on a validly executed waiver form in determining the voluntariness of a guilty plea. Nevertheless, when a defendant pleads guilty pursuant to a "package-deal" arrangement, the trial court has a duty to conduct

further inquiry into the voluntariness of the plea: although such a bargain is not per se coercive, it may be so under a totality of the circumstances. Because petitioner has not alleged sufficient facts to support a showing of coercion, however, we are required to deny the petition for writ of habeas corpus without prejudice to his filing a new petition alleging sufficient facts in accordance with this opinion.

Two armed gunmen robbed a store in Downey. Police obtained a description of the getaway car, and began pursuit. The front-seat passenger of the car leaned out of the window and began shooting at the police. An officer observed the petitioner grabbing the assailant's belt buckle. Eventually, the car pulled over. Petitioner's two codefendants, the driver and frontseat passenger, were later identified by witnesses as the armed robbers.

Petitioner claims that, contrary to his plea, he is not guilty of any offense. He instead alleges that he had been intoxicated and asleep in the back seat of the car. To support his allegation, he cites the testimony of an investigative officer at the preliminary hearing that petitioner had been intoxicated and smelled of alcohol at the time of arrest. The officer also testified that an empty rum bottle was found in the back seat of the car. The sole set of fingerprints found on the bottle belonged to petitioner.

In explaining his guilty plea, petitioner sets out the following sequence of occurrences: He met with his appointed counsel about 15 minutes before his court appearance. Counsel advised him of a proffered plea bargain for a five-year term; however, the bargain was only available if all three defendants were to plead guilty. Counsel informed petitioner that he had filed motions to set aside the information, for severance and for discovery, but urged petitioner to accept the plea bargain, as a jury might nevertheless find him guilty. Counsel also warned petitioner that if the bargain was refused, it would be withdrawn as to his codefendants, who would likely be found guilty and face severe sentences. Counsel then asked petitioner to initial a printed waiver form, which enunciated certain constitutional rights, in order to save the court time in taking his plea. Petitioner complied.

The record of the plea proceeding does not reflect any of these allegations; however, it does show that the judge questioned petitioner as to whether he had read the form, understood his rights and discussed them with counsel. Petitioner replied affirmatively. He now claims that he had not read the form, nor discussed its contents with his attorney, but had responded affirmatively because he felt it was required and expected of him.

At sentencing, petitioner was not advised of his limited appeal rights.[1] He alleges that he did not become aware of these rights until after time for appeal had expired. He nevertheless sent a "Notice of Appeal" to the Los Angeles County Superior Court, which was received but not filed. Petitioner then filed a petition for writ of habeas corpus with the Court of Appeal.

The Court of Appeal sent the Attorney General an ex parte communication requesting a response to the petition for habeas corpus. After receiving the response, but before petitioner could file a traverse, the Court of Appeal denied the petition.[2] Petitioner then petitioned this court for a hearing, which we granted, and issued an order to show cause.

I. *Urging the acceptance of a "package-deal" plea bargain does not per se constitute ineffective assistance of counsel.*

Petitioner claims that he was denied effective assistance of counsel because his attorney urged him to accept a plea bargain which was coercive and unbeneficial.

As we shall explain, a "package-deal" plea bargain is not intrinsically coercive, but may be so under the individual circumstances. Unless counsel

---

[1]California Rules of Court, rule 250 requires the trial court to advise a defendant of his right to appeal after imposing sentence upon conviction after trial or revocation of probation. There is no equivalent provision, however, requiring advisement at sentencing after a plea of guilty. Petitioner claims that the failure to advise him of his limited appeal rights violates equal protection. He argues that an appeal right is fundamental, triggering strict scrutiny, a standard which the state cannot meet.

We need not address this contention at this time. The only remedy for failure to advise petitioner of his right of appeal would be to reinstate his right to appeal, but petitioner does not suggest any issues he could raise on appeal that are not already before this court on his petition for habeas corpus.

We recognize that petitioner's claim that he did not waive his *Boykin* (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]) and *Tahl* (1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) rights (see text at pp. 284-286, *post*) would be reviewed under a more favorable standard on appeal than on petition for habeas corpus. Specifically, if petitioner did not waive those rights, he would be entitled to automatic reversal on appeal, but would have to prove prejudice in a habeas corpus proceeding. (See *In re Ronald E.* (1977) 19 Cal.3d 315, 320-321 [137 Cal.Rptr. 781, 562 P.2d 684].) We have concluded, however, that petitioner did in fact validly waive the rights in question, a conclusion sufficient to dispose of the issue under either standard of review.

[2]Petitioner challenges the "informal response" procedure utilized by the Court of Appeal as being violative of due process. We need not address this issue because we eventually granted a hearing.

We note, however, that no authority exists for the "informal response" procedure. The denial of a petition for writ of habeas corpus on the basis of factual assertions in an informal response by the respondent deprives the petitioner of the opportunity to obtain an order to show cause based solely on his factual allegations and the record. Accordingly, due process may require that the "informal response" procedure be discontinued or, in the alternative, that habeas corpus petitioners be permitted to answer the response.

was aware of particular coercive forces, the decision to urge his client to accept such a plea bargain would be untainted. In *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], we held that failure to act in a reasonably competent and diligent manner resulting in the withdrawal of a potentially meritorious defense amounted to ineffective assistance of counsel, but that an informed tactical choice would not. In the instant case, counsel was diligent in preparing motions, including discovery, but apparently was convinced that the petitioner would likely be convicted, and would benefit from the proffered bargain. Such an informed, tactical judgment, even though it resulted in the withdrawal of a potentially meritorious defense that the petitioner had been intoxicated and asleep,[3] does not constitute incompetence. (See, e.g., *People* v. *Hernandez* (1979) 96 Cal.App.3d 856, 865 [158 Cal.Rptr. 434].)

II. *Under normal circumstances, the trial court may properly rely on a validly executed waiver form in assessing the voluntariness of a plea of guilty.*

The United States Supreme Court held in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709] that before a defendant may enter a plea of guilty, he must knowingly and intelligently waive certain constitutional rights: the privilege against self-incrimination, the right to trial by jury, and the right to confront his accusers. (P. 243 [23 L.Ed.2d at p. 279].) "What is at stake for an accused facing death or imprisonment," the court stated, "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought [citations], and forestalls the spin-off of collateral proceedings that seek to probe murky memories." (Pp. 243-244 [23 L.Ed.2d at pp. 279-280].)

In *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], we explained that to assure compliance with this obligation, "the record must

---

[3]Respondent argues that evidence of intoxication would not present a meritorious defense. Petitioner, however, was originally charged with robbery by use of a firearm, and six counts of assault with intent to commit murder. If the jury were to believe that petitioner had been intoxicated and asleep in the back seat of the car during the robbery, he might have been acquitted of the robbery charges.

With regard to the assault charges, a police officer testified at the preliminary hearing that *he saw petitioner grabbing the passenger's belt buckle as the passenger shot at police.* Three inferences could be drawn from such an observation: (1) that petitioner intended to aid the passenger in shooting; (2) that petitioner was only trying to prevent the passenger from falling out of the car; or (3) that petitioner was trying to stop the passenger from shooting. A jury might well reasonably doubt whether petitioner was actually aiding and abetting the shooting. Thus, by pleading guilty, this petitioner may have foregone a meritorious defense to the assault charges as well.

contain *on its face* direct evidence that the accused was aware, or made aware [of these rights and of the nature of the charges and the consequences of the plea]." (P. 132, italics in original.) The recitation of rights need not be in legalistic language, so long as it conveys to the layman the essential character of the rights. (*People* v. *Lizarraga* (1974) 43 Cal.App.3d 815 [118 Cal.Rptr. 208].)

We further indicated in *Tahl* that something less than full admonishment of the defendant by the court might be permissible in a proper context. In a footnote, we stated that "were the court to ask counsel whether he had advised the defendant of his right of confrontation and ask the defendant whether he waived that right, receiving an affirmative reply to both inquiries, this would satisfy the requirement of an express, on-the-record waiver of that right. [Citation.] What is required is evidence that the particular right was known to and waived by the defendant. The explanation need not necessarily be by the court, although the waiver must be by the defendant. We reiterate, however, that wherever there is doubt an explicit and direct canvassing of the right with the defendant by the trial court is to be preferred, and may be necessary." (*In re Tahl, supra,* 1 Cal.3d at p. 133, fn. 6.)

We subsequently approved the use of a waiver form in lieu of a personal appearance in misdemeanor proceedings in *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273]. We recognized the prophylactic nature of the rules set forth in *Boykin* and *Tahl,* and "that the protection afforded by these decisions can be satisfied by counsel's presentation of an adequate waiver form, personally completed and signed by the defendant, and by counsel's affirmation that he informed his client of his rights and that his client knowingly and voluntarily waived them." (P. 292.) We did not decide, however, whether such a form would be adequate in the felony context.

■ Since *Mills,* a conflict has arisen in the Courts of Appeal whether a validly executed waiver form may also act as a proper substitute for admonishment by the trial court in a felony case. We resolve this conflict by holding that in those felony cases which do not involve special circumstances which might indicate that a plea is otherwise involuntary, reliance on such a form by the trial court is sufficient to satisfy the dictates of *Boykin* and *Tahl.*

The underlying purpose of the *Boykin* and *Tahl* rules is to ensure that a defendant is actually informed of his rights, and has had an opportunity to make an intelligent choice to plead guilty. A sufficient waiver form can be a great aid to a defendant in outlining those rights. The defense attorney,

who is already subject to a duty to explain the constitutional rights outlined in a proper waiver form to his client prior to the client's entering a plea, may even find it desirable to refer to such a form. Thus, a defendant who has signed a waiver form upon competent advice of his attorney has little need to hear a ritual recitation of his rights by a trial judge. The judge need only determine whether defendant had read and understood the contents of the form, and had discussed them with his attorney. If the questioning of defendant and his attorney leads the judge to believe that the defendant does not in fact fully comprehend his rights, or the consequences of pleading guilty, however, the judge must conduct further canvassing of the defendant to ensure a knowing and intelligent waiver of rights.

Thus, we find no need to follow federal practice which requires the trial court personally to admonish a defendant of his or her constitutional rights before accepting a guilty plea. (See Fed. Rules Crim. Proc., rule 11(c), 18 U.S.C.) We recognize that other jurisdictions have adopted this procedure (see, e.g., Mich. Gen. Rules of Ct. of 1963, rule 785.7(1); *People* v. *Napier* (1976) 69 Mich.App. 46, 48 [244 N.W.2d 359, 360]; Ill. Supreme Ct. Rules, rule 402; *State* v. *Cummings* (1972) 7 Ill.App.3d 306 [287 N.E.2d 291]; Colo. Rules Crim. Proc., rule 11; *People* v. *Van Hook* (1975) 36 Colo. App. 226 [539 P.2d 507]; *Church* v. *State* (Ala.Crim.App. 1977) 344 So.2d 1253; *Cooper* v. *State* (1973) 53 Ala.App. 36 [297 So.2d 169]). We nevertheless remain unconvinced of its necessity. If counsel properly fulfills his duty to explain the waiver of constitutional rights, a further repetition of rights immediately before a defendant pleads guilty becomes meaningless. So long as the waiver form contains sufficient information, and both the defendant and his counsel attest to its valid execution, the judge may, in his discretion, dispense with further explanation to the defendant of his rights.

We therefore approve *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450 [163 Cal.Rptr. 57], insofar as it approves of reliance on a waiver form under normal circumstances. We disapprove any language in *People* v. *Bell* (1981) 118 Cal.App.3d 781 [173 Cal.Rptr. 669] to the contrary.

III. *A "package-deal" plea bargain is not coercive per se; nevertheless, the court must be persuaded that the plea is given voluntarily under the totality of the circumstances before accepting a guilty plea pursuant to such a bargain.*

Petitioner urges us to adopt a rule invalidating the so-called "package-deal" plea bargain in which the prosecutor offers a defendant the opportunity to plead guilty to a lesser charge, and receive a lesser sentence, contingent upon a guilty plea by *all* codefendants. We decline to do so, but instead hold that such bargains, while not per se coercive, may nevertheless

be so upon an examination of the totality of the circumstances. Therefore, in addition to complying with the dictates of *Boykin* and *Tahl,* as discussed above, the trial court must determine whether the plea is being entered into pursuant to a package deal bargain, and, if so, conduct an inquiry into possible coercive forces prior to accepting the guilty plea.

■ It has long been established that guilty pleas obtained through "coercion, terror, inducements, subtle or blatant threats" are involuntary and violative of due process. (*Boykin* v. *Alabama, supra,* 395 U.S. 238, 243, fn. omitted [23 L.Ed.2d 274, 279].) "[Pleas] 'induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. brides) . . .' [cannot stand]." (*Brady* v. *United States* (1969) 397 U.S. 742, 755 [25 L.Ed.2d 747, 760, 90 S.Ct. 1463], quoting *Shelton* v. *United States* (5th Cir. 1957) 242 F.2d 101, 115 (Tuttle, J., dis.).)

■ Single plea bargains, as opposed to "package-deal" ones, although containing some elements of coercion, have nevertheless been upheld as proper. (See *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663]; *People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409].) In the normal bargain, a defendant must choose between pleading guilty and receiving a lesser sentence, or taking his chances at a trial (in which he may be convicted and receive a greater sentence). The prosecutor seeks to avoid the time and expense of trial. These are proper considerations by both parties that do not amount to such coercion as to unduly force a defendant to plead guilty. (*Ibid.*)

■ "Package-deal" plea bargains, however, may approach the line of unreasonableness. Extraneous factors not related to the case or the prosecutor's business may be brought into play. For example, a defendant may fear that his wife will be prosecuted and convicted if he does not plead guilty; or, a defendant may fear, as alleged in this case, that his codefendant will attack him if he does not plead guilty. Because such considerations do not bear any direct relation to whether the defendant himself is guilty, special scrutiny must be employed to ensure a voluntary plea. "[P]lea bargaining of adverse or lenient treatment for some person *other* than the accused . . . might pose a greater danger of inducing a false guilty plea . . . ." (*Bordenkircher* v. *Hayes, supra,* 434 U.S. at p. 364, fn. 8 [54 L.Ed.2d at p. 611]; italics in original.)

As we point out below, certain factors may appear to render a plea pursuant to a "package-deal" bargain coercive, or not coercive, upon close examination. Because we believe that it is possible for such a plea to be

entered without undue force, we choose not to invalidate all "package-deal" bargains as coercive per se. Rather, the trial court assumes a duty to conduct an inquiry into the *totality of the circumstances* to determine whether, in fact, a plea has been unduly coerced, or is instead freely and voluntarily given.[4]

The totality of the circumstances test in examining the voluntariness of a guilty plea pursuant to a "package-deal" bargain appears to be the prevailing view. (See, e.g., *United States* v. *Tursi* (1st Cir. 1978) 576 F.2d 396; *United States* v. *Glass* (4th Cir. 1963) 317 F.2d 200; *United States* v. *Nuckols* (5th Cir. 1979) 606 F.2d 566; *Conley* v. *Cox* (8th Cir. 1943) 138 F.2d 786; *Johnson* v. *Wilson* (9th Cir. 1967) 371 F.2d 911; *United States* v. *Bambulas* (10th Cir. 1978) 571 F.2d 525; *Crow* v. *United States* (10th Cir. 1968) 397 F.2d 284; *Commonwealth* v. *Dupree* (1971) 442 Pa. 219 [275 A.2d 326]; *Combs* v. *Turner* (1971) 25 Utah 2d 397 [483 P.2d 437]; *People* v. *Duran* (1972) 179 Colo. 129 [498 P.2d 937]; *Seybold* v. *State* (1973) 61 Wis.2d 227 [212 N.W.2d 146]; *State* ex rel. *White* v. *Gray* (1973) 57 Wis.2d 17 [203 N.W.2d 638]; *People* v. *James* (1975) 393 Mich. 807 [225 N.W.2d 520]; *People* v. *Rodriguez* (1974) 79 Misc.2d 1002 [362 N.Y.S.2d 116].) In those jurisdictions, special care is taken to determine the voluntariness of the plea. (See, e.g., *Tursi, supra*; *Glass, supra, Cox, supra*; *Wilson, supra*; *Crow, supra*; *Gray, supra*.) We go one step further, however, by *requiring* an inquiry into the totality of the circumstances whenever a plea is taken pursuant to a "package-deal" bargain. We are satisfied that this requirement will suffice to discover any unduly coercive forces which might render such a plea involuntary.

Various factors must be considered at the inquiry. First, the court must determine whether the inducement for the plea is proper. The court should be satisfied that the prosecution has not misrepresented facts to the defendant, and that the substance of the inducement is within the proper scope of

---

[4]We have used a totality of the circumstances test in the past to determine whether a promise of leniency to a third party might likely induce a coerced *confession*. "Although '[t]he fact that a defendant believes or hopes his confession may result in the exoneration of others does not render it involuntary as a matter of law' [citations], here there were other facts [to indicate coercive forces.]" (*People* v. *Haydel* (1974) 12 Cal.3d 190, 201, fn. 5 [115 Cal.Rptr. 394, 524 P.2d 866]; see also *People* v. *Matlock* (1959) 51 Cal.2d 682 [336 P.2d 505].) The compulsory forces that may be present in a confession are sufficiently similar to those in a guilty plea to warrant the application of similar principles in each. In fact, the danger of coercion may be even greater in a confession, since a confession may be made on the spur of the moment, without contemplation, while a guilty plea is usually taken after much thought and deliberation. Thus, there is little reason to impose a stricter standard in assessing the voluntariness of a guilty plea than in assessing the voluntariness of a confession when there has been a promise of leniency to a third party.

the prosecutor's business.[5] (See *Brady* v. *United States, supra,* 397 U.S. at p. 755 [25 L.Ed.2d at p. 760].) The prosecutor must also have a reasonable and good faith case against the third parties to whom leniency is promised. "Recognizing . . . that threats to prosecute third persons can carry leverage wholly unrelated to the validity of the underlying charge, we think that prosecutors who choose to use that technique must observe a high standard of good faith. Indeed, absent probable cause to believe that the third person has committed a crime, offering 'concessions' as to him or her constitutes a species of fraud. At a minimum, we think that prosecutors may not induce guilty pleas by means of threats which, if carried out, would warrant ethical censure. [Citations.]" (*United States* v. *Nuckols, supra,* 606 F.2d at p. 569.)

Second, the factual basis for the guilty plea must be considered. If the guilty plea is not supported by the evidence, it is less likely that the plea was the product of the accused's free will. The same would be true if the "bargained-for" sentence were disproportionate to the accused's culpability.

Third, the nature and degree of coerciveness should be carefully examined. Psychological pressures sufficient to indicate an involuntary plea might be present if the third party promised leniency is a close friend or family member whom the defendant feels compelled to help. "[T]he voluntariness of a plea bargain which contemplates special concessions to another—especially a sibling or a loved one—bears particular scrutiny by a trial or reviewing court conscious of the psychological pressures upon an accused such a situation creates." (*State* ex rel. *White* v. *Gray, supra,* 203 N.W.2d 638, 644.) If the defendant bears no special relationship to the third party promised leniency, he may nevertheless feel compelled to plead guilty due to physical threat. For example, if the third party had made a specific threat against defendant if he refused to plead guilty, the plea is likely to be involuntary. On the other hand, if the defendant merely thought, as in the case at bar, that his codefendant would attack him if he did not plead guilty, sufficient coercive factors may not be at play.

Fourth, a plea is not coerced if the promise of leniency to a third party was an insignificant consideration by a defendant in his choice to plead

---

[5]We recognize that the "package-deal" may be a *valuable tool* to the prosecutor, who has a need for *all* defendants, or none, to plead guilty. The prosecutor may be properly interested in avoiding the time, delay and expense of trial of all the defendants. He is also placed in a difficult position should one defendant plead and another go to trial, because the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy. Thus, the prosecutor's motivation for proposing a "package-deal" bargain may be strictly legitimate and free of extrinsic forces.

guilty. For example, if the motivating factor to plead guilty was the realization of the likelihood of conviction at trial, the defendant cannot be said to have been "forced" into pleading guilty, unless the coercive factors present had nevertheless remained a *substantial factor* in his decision. (Cf. *Commonwealth* v. *Dupree, supra,* 275 A.2d 326; *Seybold* v. *State, supra,* 61 Wis.2d 227; *Combs* v. *Turner, supra,* 25 Utah 2d 397.)

Our list is by no means exhaustive. Other factors which may be relevant can and should be taken into account at the inquiry. For example, the age of the defendant (see *People* v. *Rodriguez, supra,* 79 Misc.2d 1002 [362 N.Y.S.2d 116]), whether defendant or the prosecutor had initiated the plea negotiations (see *People* v. *Duran, supra,* 498 P.2d 937), and whether charges have already been pressed against a third party (see *Seybold* v. *State, supra,* 61 Wis.2d 227) might be important considerations.

## IV. *Conclusion*

We do not make any findings as to the truth of the allegations of the petitioner. The record, however, does sufficiently demonstrate that petitioner pled guilty as part of a "package deal" plea bargain and that the trial court failed to inquire into the possibly coercive character of that bargain. ■■ ■■■ Under our decision in *In re Ronald E., supra,* 19 Cal.3d 315, 320-321, 325-326, however, a plea cannot be set aside on petition for habeas corpus unless the petitioner demonstrates prejudice.[6] Thus petitioner here must allege and prove that his plea of guilty was involuntary under the standards set down in this opinion and should not have been accepted by the trial court. Because he does not advance such allegations, we must deny the present petition.

The petition for habeas corpus is denied without prejudice to petitioner filing a new petition in the superior court alleging sufficient facts to establish that his plea to the charges of robbery and assault with a deadly weapon was involuntary.

Richardson, J., Kaus, J., and Danielson, J.,* concurred.

---

[6]Since the duty of inquiry established by this opinion is prophylactic in character, and not constitutionally compelled, the same requirement of prejudice governs on appeal. (See *In re Ronald E., supra,* 19 Cal.3d 315, 320-321.) In seeking to set aside a plea as involuntary under the standards discussed in this opinion, both a petitioner seeking a writ of habeas corpus and an appellant must point to facts to show not only the lack of an inquiry but also the involuntary character of his plea.

Because the present decision will not result in vacating any plea merely because of the lack of inquiry, but instead requires proof that the plea was involuntary, no burden on the administration of justice will result from applying this holding retroactively.

*Assigned by the Chairperson of the Judicial Council.

**MOSK, J.**—I concur generally, but must dissent from that part of the majority opinion which approves the acceptance of the guilty plea.

I have grave reservations about the use of waiver forms in a felony context. It is much too tempting for harried defense counsel, eager to conclude the case and to get on with the next one, to instruct his client to "sign here, and tell the judge that you have been advised of your rights and understand them."

In *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449], we declared that "the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant." (Italics in original.) It is true that in *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 303 [110 Cal.Rptr. 329, 515 P.2d 273], we recognized "the realities of the typical municipal and justice court environment cannot be ignored," and we permitted deviation from the strict *Tahl* requirements so long as the spirit of the constitutional principles is respected. (See also *In re Johnson* (1965) 62 Cal.2d 325, 335-336 [42 Cal.Rptr. 228, 398 P.2d 420].) It cannot be doubted that the inundating flow of human traffic through inferior courts requires modification of the *Tahl* insistence on a catalogue of individual responses "elicited from the person of the defendant." But felony proceedings have consequences of much too grave a nature to permit their termination in a manner as casual as a guilty plea to a charge of parking a vehicle in a red zone.

I do not believe *Tahl* is satisfied by the use of printed forms, although, of course, they may be employed for corroboration of responses given orally in open court. *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450 [163 Cal.Rptr. 57], is misguided and should be disapproved. After this majority opinion is published, it is likely that forms will almost universally replace court interrogation of defendants and direct defendant responses, all in the interest of speed and efficiency. When constitutional rights and the understanding of them are involved, I prefer thorough explication and demonstrated comprehension, rather than cold efficiency. The result in this case is a retrogression in criminal court procedures to which I cannot subscribe.

Bird, C. J., and Reynoso, J., concurred.