Filed 9/6/13  P. v.Thompson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH EMMANUELL THOMPSON,<br><br>    Defendant and Appellant. | D061766<br><br><br><br>(Super. Ct. No. SCD235417) |


APPEAL from a judgment of the Superior Court of San Diego County, Charles R. Gill, Judge.  Affirmed.

Julie Feldstein Puleo for the Defendant and Appellant under appointment by the Court of Appeal.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, William M. Wood, Ifeolu E. Hassan, Deputy Attorneys General for the Plaintiff and Respondent.

Joseph Emmannuell Thompson pleaded guilty to receiving stolen property (Pen. Code,[1] § 496d), and now appeals the denial of his motion to withdraw his plea. Thompson contends the court abused its discretion in denying the motion because (1) his plea was coerced and offered as a package deal with that of his codefendant brother, Michael Thompson;[2] and (2) he received ineffective assistance of counsel, who failed to advise him fully of the consequences of his plea and improperly negotiated it in the presence of Michael and Michael's counsel. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[3]

In June 2011, two detectives assigned to a San Diego County regional task force conducted an operation to investigate auto theft. The detectives met with Thompson, Michael, and Miguel Lange to arrange the purchase of stolen motorcycles that Lange said were stored at Michael's residence. Thompson was within hearing range when Lange said this. During the meeting, a detective overheard Thompson arguing with Lange about his payment. The detective testified at the grand jury proceedings that participants in auto theft schemes commonly demand payment during a sale.

During grand jury proceedings, the prosecutor asked a detective whether Thompson had aided, promoted or facilitated the sale of the two motorcycles. The detective responded in the affirmative, explaining that Thompson drove the pickup that

_____

1      All statutory references are to the Penal Code unless otherwise stated.

2      We will refer to Michael Thompson by his first name to avoid confusion.

3      We rely on the grand jury transcript for the facts regarding the crimes.

2

delivered the motorcycles, accepted the detective's money, admitted selling items that he had stolen from nonprofit organizations, and offered to sell stereo equipment to the detective.

In August 2011, the grand jury indicted Thompson, Michael, and Lange for unlawful taking and driving of a vehicle (Veh. Code, § 10851 subd. (a)), and selling a stolen vehicle (Pen. Code, § 496d).

In October 2011, the prosecutor negotiated a package deal for Thompson and Michael. On Thompson's plea form, he pleaded guilty to "wrongfully aid[ing] and abett[ing] another in the possession of a stolen vehicle." The plea form also documents the prosecutor's offer and the court's indicated sentence: "Dismiss balance [of charges]. N.O.L.T. Court in chambers commits to felony court probation." The court reviewed the plea with Thompson, confirmed he understood his rights, and accepted his plea. The court asked Thompson, "Do you understand that by pleading guilty, the maximum penalty that can be imposed is three years imprisonment, a fine of up to $10,000, being placed on parole for up to four years?" Thompson replied, "Yes, sir, I do." The court then asked, "Mr. Thompson, you've been charged . . . with buying, receiving, concealing, selling or withholding a stolen vehicle . . . . How do you plead to that charge?" Thompson replied, "I plead guilty, your honor."

At a February 2012 hearing, Thompson moved to withdraw his plea and replace his counsel. Thompson alleged in his declaration supporting his motion that during plea negotiations, his attorney and Michael's attorney sat on either side of him and "bombarded [him] with a guilt trip about [his] brother's case and how [he] needed to save

3

[his] brother from spending 25 to life in prison," and instead get his brother a "[five]-year deal." Thompson testified that "it was [his] understanding that the only way through this was for [him] to take a plea and for [his] brother to take a plea." Thompson explained that during plea negotiations he was told that a videotape showed he did not steal the motorcycles. However, he continued, "[B]ecause of my past [criminal] record and because I did deliver the motorcycles that that would be the question" if the matter proceeded to trial. According to Thompson, his attorney failed to explain: "what evidence the prosecutor would have to present at trial to establish that [Thompson] aided and abetted the theft by [his] brother"; "that [Thompson] had defenses to the charges"; and that the acronym N.O.L.T.—not opposed to local time—meant a defendant may spend more time in custody.

Thompson's attorney testified at the motion hearing: "I made notes of our discussion. . . . And I see where I said to him 'NOLT, in caps, as an acronym.' It doesn't say in my notes that I then said, 'Here's how it breaks down,' but I can tell you that my standard protocol is to be very, well, pedantic, really, about it. I say, 'This is an acronym, N-O-L-T, not opposed to local time.' And I usually go through that little song and dance with them so they do understand it. [¶] Mr. Thompson seemed a little more savvy to the lingo, so in his case I might not have—it's possible, I don't think I would have done that, but it could have happened."

The court denied Thompson's motion, stating: "There has been no credible evidence . . . to show good cause to allow Mr. Thompson to withdraw his plea. . . . I believe at the time the plea was taken Mr. Thompson fully understood his rights, he

4

voluntarily waived those rights, and he pled guilty to the charge. I believe there wasn't any coercion or confusion, and there was no evidence to support that in fact there was." The court sentenced Thompson to three years summary felony probation.

DISCUSSION

I.

Thompson contends the court abused its discretion by denying his motion to withdraw his guilty plea, which was not knowing, voluntary, and intelligent because his attorney, his brother, and his brother's attorney coerced him into accepting the package deal, and he did not understand the meaning of "N.O.L.T." We review a trial court's decision to deny a motion to withdraw a guilty plea for abuse of discretion. (*People v. Holmes* (2004) 32 Cal.4th 432, 442.)

The California Supreme Court has held that a package deal "is not intrinsically coercive, [but] it may be so under the individual circumstances. Unless counsel was aware of particular coercive forces, the decision to urge his client to accept such a plea bargain would be untainted." (*In re Ibarra* (1983) 34 Cal.3d 277, 283-284 (*Ibarra*), disapproved on other grounds in *People v. Howard* (1992) 1 Cal.4th 1132, 1175-1178.) The *Ibarra* court's four nonexclusive factors for determining whether a defendant freely, voluntarily, and intelligently agreed to a package deal are: (1) whether the inducement for the plea was proper; (2) the factual basis for the plea; (3) the nature and degree of coerciveness; and (4) any other relevant factors, including whether the prosecutor's leniency to the codefendant substantially influenced the defendant's decision to plead guilty. (*Ibarra,* at pp. 289-290.)

5

Applying these factors, we conclude the trial court did not abuse its discretion. First, the inducement for the plea was proper because the grand jury testimony supported the prosecution's charges against Thompson. Furthermore, the prosecution had a "reasonable and good faith case against" Michael. (*Ibarra, supra,* 34 Cal.3d at p. 289.) The evidence showed Michael played a more substantial role in the crimes than Thompson. Thompson does not contend the prosecution misrepresented or withheld facts germane to his decision to plead guilty. We conclude the first factor does not support withdrawal of the plea.

Second, the detectives' grand jury testimony provided a strong factual basis for a conviction; therefore, Thompson had an incentive to accept the plea. Thompson was present at the meeting between the codefendants and detectives, and sought payment on the spot. Thompson offered to sell the detectives other stolen property. Additionally, the prosecution's lenient offer was that Thompson serve probation rather than the maximum sentence of three years in prison. We conclude this factor weighs against withdrawal of Thompson's plea.

Third, we accept at face value Thompson's claim that the presence of Michael and his counsel during Thompson's plea negotiations influenced Thompson's decision to accept the guilty plea. Thus we conclude this factor weighs in Thompson's favor.

Fourth, in evaluating whether the prosecutor's leniency to the codefendant was a "substantial factor" influencing his decision to plead guilty, we think this factor weighs in Thompson's favor based on his claim that his brother's lawyer and his own lawyer

6

"bombarded him with a guilt trip" about saving his brother from having to spend 25 years to life in prison and instead, get his brother a five-year sentence.

But *Ibarra* also instructs us that "Other factors, which may be relevant can and should be taken into account at the inquiry. For example, the age of the defendant, . . . whether the defendant or the prosecutor initiated the plea negotiations." (*Ibarra, supra,* 34 Cal.3d at p. 290.) In that regard, we note that Thompson was 54 years old when he changed his plea. Further, his counsel indicated that Thompson was familiar with the process of plea bargains, noting that Thompson "seemed a little more savvy to the lingo." Indeed, Thompson has a long criminal record dating from 1979, and it includes plea bargains. Moreover, when the trial court accepted the plea, it specifically asked Thompson whether anyone had threatened him into taking the deal. Thompson answered in the negative. Finally, Thompson had other motives that could have influenced him to plead guilty; specifically, his concern that his criminal record would be a detriment at trial.

Under the totality of the circumstances, we conclude the trial court did not abuse its discretion in denying Thompson's motion to withdraw his guilty plea. Although we grant Thompson the benefit of his claims that the presence of Michael and Michael's counsel factored into his decision to accept the plea, and that the promised leniency to his brother was a significant consideration in his accepting the guilty plea, other factors outweigh those considerations and support the trial court's exercise of its discretion to deny the withdrawal motion.

II.

Thompson contends his attorney provided constitutionally ineffective assistance because Thompson did not understand the meaning of "N.O.L.T." and his attorney only met with him twice, then pressured him to accept the plea bargain.

To prove ineffective assistance of counsel, a criminal defendant must show the attorney's performance did not meet an objective standard of reasonableness under prevailing professional norms; and the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692 (*Strickland*); see also *People v. Ledesma* (1987) 43 Cal.3d 171, 214-218.)  "If counsel's acts or omissions appear to result in defendant's entering a plea under the influence of 'mistake, ignorance or inadvertence or any other factor overreaching defendant's free and clear judgment' which would justify withdrawal of his plea, he was ineffectively represented by counsel."  (*People v. Hunt* (1985) 174 Cal.App.3d 95, 104.)  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  (*Strickland, supra,* 466 U.S. at p. 697.)

Additionally, "[A] reviewing court must adopt the trial court's factual findings if substantial evidence supports them."  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)  The trial court found "*no credible evidence . . .* to show good cause to allow Mr. Thompson to withdraw his plea."  We conclude that substantial evidence shows Thompson knowingly, voluntarily, and intelligently agreed to the plea bargain: Thompson indicated that he understood his rights when the court accepted the plea. When he alleged coercion at the second hearing regarding withdrawal, he did not ask

about "N.O.L.T." until after signing the plea deal. Further, he did not establish that his attorney had failed to advise him of the meaning of N.O.L.T. Accordingly, assuming Thompson's attorney had provided ineffective assistance, Thompson cannot show prejudice under *Strickland*.

"In determining whether or not a defendant who has pled guilty would have insisted on proceeding to trial had he received competent advice, an appellate court also may consider the probable outcome of any trial, to the extent that may be discerned." (*In re Resendiz* (2001) 25 Cal.4th 230, 254.) If Thompson had elected to proceed to trial and made out a valid claim, he could have obtained severance of his case from his brother's case. Moreover, if Thompson had declined the plea bargain and proceeded to trial, he likely would have been convicted of aiding and abetting the theft of the motorcycles, based on the strong evidence against him, as noted. Finally, the record shows Thompson recognized that his criminal history would have undermined his credibility in a trial. Therefore, on this record, Thompson fails to persuade us that, absent his counsel's challenged actions, it is reasonably probable Thompson would have forgone the lenient plea agreement in favor of proceeding to trial.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.