Filed 6/10/14  P. v. Koppe CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C073768 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00760) |
| v. | |
| CHRISTOPHER WILLIAM KOPPE, | |
| Defendant and Appellant. | |

Defendant Christopher Koppe was charged with first degree murder.  He agreed to a package plea with his codefendant son and pled no contest to second degree murder. He then filed a motion to withdraw his plea, which the trial court denied.  According to defendant, the trial court abused its discretion by denying his motion to withdraw because his plea was not given voluntarily due to his paternal relationship with the codefendant which created psychological pressures overriding his free will and coercing him to agree to the deal.  We disagree and affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Police found defendant at the scene of Keenan Slotty's murder covered in blood and practically confessing to the killing. In one version of the murder, according to defendant's son and codefendant Nicholas Koppe, Nicholas[1] started the fight with the victim and his father took over. Both were charged with first degree murder with an enhancement for using a deadly and dangerous weapon (a knife). If convicted as charged, defendant would have faced a prison term of 25 years-plus to life in prison. Nicholas, with two prior strikes, would have faced a sentence of 25 years-plus to life for any felony conviction.

The People were reluctant to compromise, but before the trial started they offered defendant and Nicholas a package they both had to accept. Defendant was to plead no contest to second degree murder and admit the use of a knife. He would be sentenced to a 15-year indeterminate term for the second degree murder and a one-year determinate sentence for the use of a knife, for a total of 16 years to life. Nicholas would plead no contest to one count of voluntary manslaughter, use of a knife, and assault by means of a knife, and would admit two prior convictions. He would receive a 33-year determinate sentence.

At the plea hearing, Nicholas vacillated between his options. After initially agreeing to the deal, he backed out of it. He agreed to it again after telling defendant he would do what defendant wanted, and defendant indicated he should accept the deal. At one point, Nicholas discussed the deal with his attorney and said, "Just because I can't get up to represent myself doesn't mean he should go down for the rest of his life." He backed out of the deal for a second time, but finally accepted it after the court ordered the witnesses out of the courtroom and the trial to proceed.

---

[1]     We refer to Nicholas by his first name to avoid confusion with his father, defendant.

The trial court explicitly asked defendant several questions about his rights including: if he understood and waived them, if he understood the consequences of his decision, and if he had any questions regarding his plea. He answered the questions appropriately and both he and Nicholas pled no contest to the previously mentioned charges.

Defendant filed a motion to withdraw his plea. When denying the motion, the court found defendant had made a very rational and voluntary decision because the court believed, relying on its experience with homicide cases, the People had a very strong case and a jury was likely to find defendant guilty. The trial court did not find extraneous factors, such as might be present in a package deal, that affected the outcome of the case or the decision of defendant to such a degree that it overpowered his independent will. Defendant appeals.

DISCUSSION

Defendant contends his no contest plea was not voluntary because the plea agreement was a package deal both he and his codefendent son had to accept. He contends their relationship created psychological pressures overriding his free will and coercing him to helping his son by accepting the deal. We disagree.

I

*Standard Of Review*

A motion to withdraw a plea may be granted if there is good cause. (Pen. Code, § 1018.) "To establish good cause, it must be shown that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment. [Citations.] Other factors overcoming defendant's free judgment include inadvertence, fraud or duress." (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.) "A plea may not be withdrawn simply because the defendant has changed his mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

"The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty." (*People v. Shaw* (1998) 64 Cal.App.4th 492, 496.) " '[T]he withdrawal of such a plea rests in the sound discretion of the trial court and a denial may not be disturbed unless the trial court has abused its discretion.' [Citation.] An appellate court will not disturb the denial of a motion unless the abuse is clearly demonstrated." (*In re Brown* (1973) 9 Cal.3d 679, 685.)

## II

### *Defendant's Plea Was Voluntary*

"It has long been established that guilty pleas obtained through 'coercion, terror, inducements, subtle or blatant threats' are involuntary and violative of due process." (*In re Ibarra* (1983) 34 Cal.3d 277, 287.) "Such coercion is a particular danger in the package-deal plea bargain context." (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 124-125.) Package deals are an all or none proposition; all codefendants must accept the deal or there is no deal. With a package deal, "[e]xtraneous factors not related to the case or the prosecutor's business may be brought into play. For example, a defendant may fear that his wife will be prosecuted and convicted if he does not plead guilty . . . . Because such considerations do not bear any direct relation to whether the defendant himself is guilty, special scrutiny must be employed to ensure a voluntary plea." (*Ibarra*, at p. 287.) As a result, the *Ibarra* court "*require*[s] an inquiry into the totality of the circumstances whenever a plea is taken pursuant to a 'package-deal' bargain." (*Id.* at p. 288.)

When inquiring into the totality of the circumstances, a trial court must analyze all relevant factors. (*In re Ibarra, supra,* 34 Cal.3d at p. 290.) In *Ibarra*, the court recited four important factors: 1) was the inducement for the plea proper; 2) did the prosecutor have a reasonable and good faith case against the third party; 3) what was the nature and

4

degree of the coerciveness; and 4) was the promise of leniency to a third party a significant consideration. (*Id.* at pp. 288-290.)

Here, the trial court found that defendant "made a knowing, intelligent and voluntary waiver of rights and entry of plea . . . ." When the court accepted the pleas, it did not conduct a full inquiry into the totality of the circumstances by asking about coercion. Although the court did have a duty to inquire into the circumstances surrounding the package deal, defendant's plea is not invalid per se. (*In re Ibarra, supra,* 34 Cal.3d at p. 290.) The plea can be set aside only when defendant shows prejudice. (*Ibid.*) Defendant "must allege and prove that his plea of guilty was involuntary under the standards set down in [*Ibarra*] and should not have been accepted by the trial court." (*Ibid.*)

Application of the standards set in *Ibarra* starts with examining the four factors. Defendant and the People agree that the first two factors, the inducement for the plea and the reasonable and good faith case, are not at issue. The dispute arises from the additional factors.

The third factor is the nature and degree of the coerciveness. "Psychological pressures sufficient to indicate an involuntary plea *might* be present if the third party promised leniency is a close friend or family member whom the defendant feels compelled to help." (*In re Ibarra, supra,* 34 Cal.3d at p. 289, italics added.) A close relationship is a signal to the trial court, warning it of an increased risk of coercion. But the relationship is indicative only that pressure "might" be present, not that it necessarily *is* present. There needs to be additional evidence to support the assertion of coercion.

Here, the father and son relationship raises that red flag of possible coercion, but there is no other evidence Nicholas pressured defendant to accept the agreement. Defendant never appeared reluctant or unwilling to take the offer while Nicholas, the alleged beneficiary of the coercion, was ambivalent about the arrangement and almost caused the deal to fall apart. Nicholas backed out once, then changed his mind after

5

asking defendant what he wanted to do, and defendant indicated they should go forward with the deal.  Nicholas backed out a second time, agreeing to the deal only after the trial court ordered the trial to begin.  At one point during his internal debate, Nicholas told his lawyer, "Just because I can't get up to represent myself doesn't mean he should go down for the rest of his life."  These are words of a son interested in his father's future, not one trying to coerce him into accepting a deal.

While Nicholas was wavering, defendant was steadfastly willing to accept the deal and never backed out.  The trial court explicitly asked defendant if he understood and waived his rights, if he understood the consequences of his decision, and if he had any questions regarding his plea.  He answered all questions appropriately without hint of hesitation or concern.  This is not a case where defendant was unwilling to accept the plea deal, yet did so under pressure.

Defendant argues the necessary additional evidence for coercion is found by examining how the murder occurred.  When defendant recounts one of the possible scenarios of the crime, he suggests he showed the strength of his parental concern by killing the victim to protect Nicholas.  By his reasoning, if his parental concern would cause him to kill for his son, then it could coerce him into accepting the deal.  This story, however, does not demonstrate he was pressured to accept a deal involuntarily.  His motives for killing are not probative of his reasoning for accepting the plea deal and do not provide evidence of coercion.  Defendant could freely choose to help his son; the question is whether he was coerced into doing so.  Without more evidence of pressure by or regarding Nicholas, we disagree with defendant regarding the third *Ibarra* factor.

The fourth *Ibarra* factor is that the promise of leniency to a third party must not be a significant factor in the defendant's decision to accept the deal.  "For example, if the motivating factor to plead guilty was the realization of the likelihood of conviction at trial, the defendant cannot be said to have been 'forced' into pleading guilty, unless the coercive factors present had nevertheless remained a *substantial factor* in his decision."

6

(*In re Ibarra, supra,* 34 Cal.3d at p. 290.) Defendant appears to argue coercion is evident because he accepted the deal despite a valid defense, while only Nicholas reaped benefits from the agreement. We disagree.

Defendant, if convicted as charged, would have faced 25 years to life just for the murder charge. Instead he was sentenced to 15 years to life for second degree murder. Nicholas, as long as he was convicted of a felony, would have also faced 25 years to life due to his two previous strikes. He received a determinate sentence of 33 years, ensuring a release date.

Defendant argues his shorter sentence is not a benefit. According to him, given his age, his life expectancy, and the low probability of being granted parole at his first suitability hearing, he is likely to die before he gets out of prison, even with a shorter sentence. He argues that since, with or without the plea deal, he will likely pass away before being released, he gained nothing, while Nicholas was hugely benefited, going from an indeterminate to a determinate sentence, guaranteeing a release date. However, serving 10 fewer years and increasing his odds of being released before death is a benefit to him. This is not a case where one defendant received no punishment and the other bore the brunt of the deal. Both parties were sentenced to long prison terms that are appropriate to their crimes. Additionally, defendant's view is illogical. If we were to find he is correct, then the older a defendant gets the more likely a package deal is coercive simply because he has less time to live.

Helping Nicholas, defendant argues, had to be a significant factor for accepting the deal because he had a valid defense and a chance to be found not guilty. But, when making his decision, defendant needed to weigh his defense with the risk of a jury finding him guilty. (*In re Ibarra, supra,* 34 Cal.3d at pp. 289-290.) Although we do not have access to all the evidence available to the trial court, we do know defendant was found covered in blood and practically confessed to the murder. The experienced trial court believed he would be found guilty and that he made a rational and voluntary decision.

We find it reasonable to assume the likelihood of conviction was the motivation behind the plea.

While the relationship between defendant and Nicholas must give us pause, there is no other evidence to support the assertion defendant was coerced into accepting the deal. The trial court found no extraneous factors that affected the outcome of the case and the decision of defendant such that it overpowered his independent will.

A father can voluntarily choose to help his son and thus the question is not whether he acted for the benefit of his son, but if he was coerced into acting for the benefit of his son. There is little evidence to infer that defendant did not agree to the plea "knowingly and intelligently" of his own free will and defendant had to prove he did by clear and convincing evidence. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917-918.) The trial court acted well within its discretion when it denied defendant's motion to withdraw his plea.

DISPOSITION

The judgment is affirmed.

                                        ROBIE            , J.

We concur:


    NICHOLSON      , Acting P. J.


    MAURO          , J.

8