Filed 10/22/15  P. v. Russell CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JARED WILLIAM RUSSELL,<br><br>    Defendant and Appellant. | F068436<br><br>(Super. Ct. No. CRF40034)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  Eric L. DuTemple, Judge.

Tara K. Hoveland, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Robert Gezi and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Gomes, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

Defendant Jared William Russell pled guilty to felony child abuse and possession of methadone for sale. Prior to sentencing, defendant moved to withdraw his plea, arguing it was not voluntary due to a misunderstanding of law and fact. The trial court denied defendant's motion and he was sentenced to seven years in state prison in accordance with the plea. We now consider defendant's arguments concerning his plea. Although we agree with defendant that the trial court failed to conduct the required inquiry in light of the "package-deal" plea bargain involved, reversal is not required because defendant has failed to establish prejudice. Moreover, the trial court did not abuse its discretion in denying defendant's motion. As a result, we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and Allison Artzer were each charged with a single count of felony child abuse (Pen. Code,[1] § 273a, subd. (a), count I); multiple drug-related offenses (Health & Saf. Code, §§ 11375, subd. (b)(1), counts II–IV, 11378, counts V–VII, 11351, counts VIII–IX, 11357, subd. (c), count XII); and a single count of receiving stolen property (§ 496, subd. (a), count XI). Defendant was additionally charged with transporting methadone (Health & Saf. Code, § 11352, subd. (a), count X). As to each count, defendant also faced allegations that he had served a prior prison term (§ 667.5, subd. (b)) for a prior strike conviction (§ 667, subds. (b)-(i)).

Thereafter, on May 20, 2013, defendant pled guilty to one count of felony child abuse (§ 273a, subd. (a)) and one count of possession for sale of methadone (Health & Saf. Code, § 11351); Artzer pled guilty to one count of felony child abuse (§ 273a, subd. (a)) and two separate drug possession charges (Health & Saf. Code, §§ 11375, 11377). All remaining charges were dismissed. Artzer faced local jail time and five years' probation. After admitting his prior strike and prison term as a condition of the plea,

_____

[1]Further statutory references are to the Penal Code unless otherwise indicated.

2.

defendant faced a total of seven years in prison. The parties agreed to the following factual basis for the plea:

> "On December [the] 5th, 2012, the police and sheriffs were asked to help with an eviction of … Artzer from her then apartment. When they arrived, the condition of the home was in such a state that it would cause— it was likely to cause great bodily injury or suffering or unjustifiable pain to the child present, which was the child of both … Artzer and [defendant].

> "During the search of that home, numerous pills were found, including alprazolam, which is the subject of Count IV.

> "In addition, methamphetamine was found.

> "For Count VIII, [defendant] was in possession for sale of methadone also located in that house.

> "The defendant has a prior strike, a 422, out of this county for which he served a prior prison term.

> "Many of the drugs were—and drug paraphernalia were at the height that the child of age five, which the defendants' child was, could easily reach it."

Prior to sentencing, defendant filed a motion to withdraw his plea, claiming it was not voluntary. The People filed an opposition, and a hearing was held July 29, 2013. Defendant's motion was denied.

## DISCUSSION

### *Package Deal Plea*

Defendant complains his due process rights were violated because the trial court accepted the plea in the absence of performing its additional duties pursuant to the package-deal plea bargain involved to ensure his plea was in fact voluntary. He further contends the trial court continued to violate his due process rights by denying his motion to withdraw that same plea. The People maintain that while the trial court's required inquiry was "cursory at best," its finding that defendant's plea was voluntarily did not violate defendant's due process rights, nor did it err in denying defendant's motion to withdraw his plea.

3.

*Law & Analysis*

Section 1018 provides, in relevant part:

"Unless otherwise provided by law, every plea shall be entered or withdrawn by the defendant himself or herself in open court. … On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. … This section shall be liberally construed to effect these objects and to promote justice."

Defendant contends his plea was involuntary because it was obtained pursuant to a coercive package-deal plea bargain, defined by the Supreme Court as one in which the prosecutor offers a defendant the chance to plead guilty to a lesser charge, and receive a reduced sentence, contingent upon all codefendants pleading guilty. (*In re Ibarra* (1983) 34 Cal.3d 277, 286.) "It has long been established that guilty pleas obtained through 'coercion, terror, inducements, subtle or blatant threats' are involuntary and violative of due process." (*Ibarra*, at p. 287.) "[A] 'package-deal' plea bargain is not intrinsically coercive, but may be so under the individual circumstances." (*Id.* at pp. 283–284.) The California Supreme Court requires an inquiry into the totality of the circumstances whenever a plea is taken pursuant to a package-deal plea bargain, to determine whether there are any unduly coercive forces that might render such a plea involuntary. (*Id.* at p. 288.) The trial court must inquire into (1) whether the inducement for the plea is proper, (2) the factual basis for the plea, (3) the nature and degree of coerciveness, (4) whether the promise of leniency to a third party was a significant consideration in a defendant's choice to plead guilty, and (5) any other factors which may be relevant (such as defendant's age and which party initiated plea negotiations). (*Id.* at pp. 288–290.)

A trial court's failure to make an adequate inquiry does not mandate reversal. (*In re Ibarra*, *supra*, 34 Cal.3d at p. 290 & fn. 6.) A plea cannot be set aside unless a defendant demonstrates prejudice; that is, the defendant must show that his or her guilty

4.

plea was involuntary under the standards set forth by the Supreme Court  (*id*. at pp. 288–290) "and should not have been accepted by the trial court." (*Id*. at p. 290.)  This showing must be made whether a defendant challenges a plea on appeal or by way of a petition for a writ of habeas corpus.  (*Id*. at p. 290, fn. 6.)

This court reviews a trial court's decision refusing to allow a defendant to withdraw a guilty plea based on alleged coercion for abuse of discretion.  (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 123.)

> """The burden is on the defendant to present clear and convincing evidence the ends of justice would be subserved by permitting a change of plea to not guilty." [Citation.]'  [¶] "'When a defendant is represented by counsel, the grant or denial of an application to withdraw a plea is purely within the discretion of the trial court after consideration of all factors necessary to bring about a just result.  [Citations.]  On appeal, the trial court's decision will be upheld unless there is a clear showing of abuse of discretion. [Citations.]" [Citation.]  "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." [Citation.]'"  (*Ibid*.)

Here, it is plain the trial court's on-the-record inquiry into defendant's plea did not cover all the factors set forth in *In re Ibarra*, *supra*, 34 Cal.3d at pages 288–290.

Specifically, as for whether the inducement for the plea was proper, the trial court "should be satisfied that the prosecution has not misrepresented facts to the defendant, and that the substance of the inducement is within the proper scope of the prosecutor's business.  [Citation.]  The prosecutor must also have a reasonable and good faith case against the third parties to whom leniency is promised." (*In re Ibarra*, *supra*, 34 Cal.3d at pp. 288–289, fn. omitted.)  No such inquiry was made of defendant on the record.  The court likewise did not inquire into the "nature and degree of coerciveness" of the plea, examine whether there was a "special relationship" with a third party offered leniency, or inquire whether leniency to a third party was a significant consideration in defendant's choice to plead guilty.  (*Id*. at pp. 289–290.)

The trial court did, however, consider the factual basis for defendant's guilty plea. (*In re Ibarra*, *supra*, 34 Cal.3d at p. 289.)  The parties agreed to and recited a factual

basis for the plea, and the trial court accepted that recitation. The trial court also asked defendant and Artzer if each had had the opportunity to review and discuss the advisement and waiver of rights form with their attorneys, and whether they understood the rights being given up. The court also inquired of defense counsel whether they had reviewed the forms with their clients and whether they believed their clients understood the consequences of their pleas. All responses were positive. In sum, the trial court failed to complete its inquiry into the totality of circumstances surrounding this plea.

Although we agree with defendant that the trial court did not adequately inquire into the totality of the circumstances of the package-deal plea bargain, we disagree defendant has shown he was prejudiced by the lack of inquiry, or that the trial court abused its discretion in not permitting defendant to withdraw his plea. (*In re Ibarra*, *supra*, 34 Cal.3d at p. 290 & fn. 6; *People v. Sandoval*, *supra*, 140 Cal.App.4th at p. 127.)

On the same date defendant entered his guilty plea, the court read and considered a four-page letter submitted to the court through then-defense counsel. Defendant's letter advised the trial court that he wanted "the chance to do the DDC program and reunify with [his] child" because Artzer was "running out of chances" and was facing a termination of her parental rights. Defendant expressed his desire to receive an offer of something less than the seven years offered by the People, but in the absence of something less, he stated he would "be taking this case to trial." He concluded by saying he did not want to "be pushed or bullied into accepting offers on stacked charges …," believing Artzer to be the more criminally responsible of the two.

Six weeks later, defendant's declaration made no mention whatsoever of any pushing or bullying, or any other form of coercion. Defendant's declaration states he was not aware the prosecutor would be required to prove he had knowledge of the illegal nature of the pill found in his pocket, and he did not know that particular substance had not been laboratory-tested to prove the substance was in fact a controlled substance. Defendant further declared he had only been released on parole for a period of about four

6.

days before his and Artzer's arrests thus "most of the contraband and notes found in … Artzer's residence predate[d his] release from custody," meaning he was not culpable. Defendant concluded he would not have pled guilty had he known the extent of the People's burden of proof, that the pill in his possession was not subject to testing, nor had he "realized that the evidence found in the residence of … Artzer had dates on it for when [he] was in prison."

The declaration submitted by defendant in support of the motion to withdraw the plea omits reference to any pressure related to the package-deal plea bargain. Defense counsel's declaration does not address the issue in any way either. Neither defendant nor defense counsel allege defendant felt coerced, terrorized, induced or threatened in any way to accept the plea.

At the hearing on defendant's motion, the following colloquy occurred:

> "[DEFENSE COUNSEL:] One of the things I wanted to comment on is the People, in their reply, made a reference to this being a package deal and concerning whether or not my client's plea was freely and voluntarily made and properly informed. I would refer the Court to the *Sandoval* case.
>
> "THE COURT: Counsel, it has no bearing on it. I'm well aware of—
>
> "[DEFENSE COUNSEL]: What was what?
>
> "THE COURT: It would not in any way impact your client's ability to make his motion, if that's what you're getting to.
>
> "[DEFENSE COUNSEL]: What I'm getting to is I don't have a transcript of the plea proceedings, which I know Your Honor probably does. And you would have to review that transcript to make a determination if you have an enforcible [*sic*] type of package agreement here to begin with. I wasn't there. I wasn't the attorney of record.
>
> "But I do know in the *Sandoval* case, they pointed out that in order to even give weight to these type of package deals, the Court has to do a thorough inquiry of the defendants' entering the pleas making sure they are fully aware of this.
>
> "In this particular case, [Artzer], I believe is maybe my client's spouse, which is exactly what that Court commented on as being the reason

7.

for needing a very deep inquiry anyway. That's why I was going to go there. The very taking of the plea, it would appear, maybe something of issue.

"The second thing I wanted to mention is we still don't know what that pill is, and I think that's critical. How you can hold somebody to a knowing and intelligent plea when they don't know what the substance is is—I think renders that this plea should be set aside. Thank you.

"THE COURT: All right. [¶] … [¶] …Well, I read the declaration of previous counsel and part of the plea bargain, plea negotiations, TRC and plea. I don't find any basis for the motion to withdraw the plea and that motion will be denied."

Other than a vague reference to a special relationship existing between defendant and Artzer—and nothing more than that—defendant never alleged any pressure or coercion regarding the plea in his moving papers.

This case is readily distinguishable from *People v. Sandoval*, *supra*, 140 Cal.App.4th 111. In *Sandoval*, the prosecutor informed the trial court he had offered a package deal to four defendants accused of murder, whereby the People would agree to enter into a plea agreement only if all four defendants accepted it. (*Id*. at pp. 115–117.) Defendant Sandoval's attorney and defendant both stated on the record that Sandoval did not want to plead guilty. (*Id*. at p. 117.) The trial judge thereafter stated that Sandoval was being "selfish" in insisting on proceeding to trial, expressed the belief "the package deal was 'an amazing offer,'" and said the court sympathized with the three defendants who were willing to accept the plea deal but were prevented from doing so because of Sandoval's refusal to accept the offer. (*Id*. at pp. 118–120.) Sandoval pleaded guilty following the judge's remarks. (*Id*. at p. 120.) At an evidentiary hearing on Sandoval's subsequent motion to withdraw his plea, one of Sandoval's codefendants testified he had threatened Sandoval's life before Sandoval agreed to plead guilty, the codefendant's attorney also testified he later learned of those threats, and the defendant's attorney at the time he pleaded guilty testified the defendant had insisted on proceeding to trial the entire time she represented him until the morning he agreed to accept the plea offer. (*Id*. at pp.

8.

121–122.)  The trial court denied the defendant's motion to withdraw, but the appellate court reversed, finding there was "abundant evidence that Sandoval's guilty plea was the product of coercion."  (*Id.* at p. 127.)

Unlike *Sandoval*, here there was no evidence defendant's guilty plea was the product of coercion.  No testimony was given nor declaration offered that would support defendant having felt pressured to accept the offer because it would benefit his codefendant Artzer.  His vague reference to not wanting to be pushed or bullied—not that he *had been* pushed or bullied—preceded his motion to withdraw and that argument was not developed, as was the case in *Sandoval*.

Significantly, too, defendant has not shown his plea was involuntary under the standards set forth in *Ibarra* or that his guilty plea should not have been accepted by the trial court.  (*In re Ibarra*, *supra*, 34 Cal.3d at pp. 288–290.)  First, we agree with the People that the inducement here was proper considering the evidence against both defendant and Artzer.  Drugs and drug paraphernalia were present in Artzer's apartment and accessible to the couple's five-year-old child.  Furthermore, the record reveals Artzer picked up defendant from prison and defendant provided Artzer's address to his parole agent.  He also kept and received legal documents and other mail there.  Simply because defendant had only been released from prison days prior to his arrest does not mean the evidence against him for multiple drug offenses was weak or unsupported.  Defendant also admitted that immediately upon his release from prison he "got high."  Second, as previously noted, the factual basis for the plea was stated on the record, agreed to by all parties, and accepted by the court.  Third, as to the nature and degree of coerciveness, there is little evidence of any coercion.  Defendant's reference to pushing and bullying— in language implying forward-looking expectations rather than any action that had already occurred—does not amount to evidence of coercion.  Certainly there was no *Sandoval*-like evidence of coercion.  Fourth, as to the promise of leniency to Artzer, it may have been a significant consideration in defendant's choice to plead guilty, yet so

too would have been the significant sentence defendant faced were he to be convicted of the charges lodged against him, to wit: "28 years and 8 months." Finally, the other relevant factors to be considered—such as defendant's age and the party initiating the bargain—do not establish prejudice to defendant. Defendant had a significant criminal history at the age of 30, having very recently been released from prison following a strike conviction. Artzer and defendant were charged jointly, and the record does not establish that negotiations were initiated by any particular party. This record does not establish defendant's plea was involuntary. Hence, there was no violation of defendant's due process rights.

In sum, although the trial court erred by failing to conduct a more extensive inquiry pursuant to *Ibarra* in light of the package-deal plea bargain offered, defendant was not prejudiced. We further conclude that under the particular facts of this case, the trial court did not abuse its discretion when it denied defendant's motion to withdraw his plea.

## DISPOSITION

The judgment is affirmed.